**McARTHUR et al. v. HALL et al.**
**No. 14486.**

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 26, 1943.

Rehearing Denied March 26, 1943.

T. R. Boone, of Wichita Falls, C. S. McCuistion, of Lawton, Okl., and W. B. Chauncey, Mathis & Caldwell, John Davenport, and Kearby Peery, all of Wichita Falls, for appellants.

Kilgore & Rogers, of Wichita Falls, and Cantey, Hanger, McMahon, McKnight & Johnson, of Ft. Worth, for appellees.

BROWN, Justice.

Some time during the month of June, in the year 1904, an Indian maiden named Jennie Ho-we-ah became pregnant and, on March 29, 1905, gave birth to a girl, who was named Lenna, and is now called Lena McArthur. Lena McArthur was plaintiff below and is appellant in this court, joined by her husband, and she brought suit in the district court of Wichita County, by proper appeal from the Probate Court of such county, to contest the last will and testament of Tom L. Burnett, alleging that she is competent to contest such will by reason of the provisions of Article 3315, Revised Civil Statutes.

In the case of Moore v. Stark, 118 Tex. 565, 17 S.W.2d 1037, it is distinctly held that only a "person interested" and proving interest in the decedent's estate may contest the probate of the will and that the contest may be dismissed in the absence of proof of such interest.

Lena McArthur alleged that she is the daughter of Tom L. Burnett and Jennie Ho-we-ah and is such interested person in that her mother and Tom L. Burnett were husband and wife, as is defined and understood in the "common law" in the states of Oklahoma and Texas.

Jennie Ho-we-ah lived at all times in the Territory of Oklahoma and was such resident when Lena was born in 1905.

The evidence discloses that Tom L. Burnett was a citizen of the State of Texas at all times pertinent to the matters set forth and relied upon by Lena McArthur and that he had a wife in Texas to whom he was lawfully married, prior to the year 1904.

The evidence further discloses that Burnett maintained a residence in the State of Texas that was approximately forty miles from the place in Oklahoma where it is alleged that he lived and cohabited with Jennie Ho-we-ah, and that his said residence was much less than forty miles from the Indian land and claim on which Jennie resided.

Burnett's presence in Oklahoma Territory was occasioned by his "looking after" large herds of cattle (owned by him and his father, the late Captain S. B. Burnett) that had been driven from Texas into Oklahoma, where they were grazed on several thousands of acres of Oklahoma lands leased by the Burnetts for such purpose.

The Red River marks the boundary between the states of Texas and Oklahoma.

Jennie Ho-we-ah was a member of the Comanche Tribe of Indians.

No effort was made to show nor was there any claim of a tribal, ceremonial marriage. Lena McArthur's case rests on the allegation of a "common law" marriage.

■ The case at bar must be tested by the laws and court decisions of the State of Oklahoma; that is conceded by all parties.

■ In re Miller's Estate, 182 Okl. 534, 78 P.2d 819, 826, holds: "Common-law marriages are recognized in this state. The first expression of this court upon the question subsequent to the enactment of our present marriage laws is found in the case In re Love's Estate, 42 Okl. 478, 142 P. 305, L.R.A.1915E, 109, where the following rule is stated: 'A common-law marriage exists where competent parties agree to be and become immediately man and wife and pursuant thereto enter into and maintain thereafter the marriage relation.' "

To the same effect is the clear cut decision in Cordilla v. Taylor, 181 Okl. 20 72 P.2d 375.

■ In Vann v. Vann, 186 Okl. 42, 96 P.2d 76, 79, the following is said: "This court is committed to the rule that to constitute a valid common law marriage it is necessary that there should be an actual and mutual agreement to enter into the matrimonial relation, permanent and exclusive of all others, between parties capable of making such a contract, consummated by their cohabitation as man and wife, or their mutual assumption openly of marital duties and obligations. Bothwell et al. v. Way et al., 44 Okl. 555, 145 P. 350."

Many other cases of like import could be cited from the Oklahoma decisions and we will not extend the opinion by doing so.

We next notice some of the outstanding Oklahoma decisions that cover the requirements of the proof necessary to create a presumption of marriage.

■ In Richard v. Richard, 172 Okl. 397, 45 P.2d 101, 105, several outstanding decisions are reviewed from Oklahoma and other states. In the Richard case the court says that the Supreme Court of Oklahoma has recognized the validity of a common law marriage "when properly established by competent evidence thereof, and while the contract of marriage must be proven as other contracts are proved, circumstantial evidence of cohabitation, reputation, declarations, conduct, and admissions is admissible, not to make the contract of marriage, but as evidence that such a contract had theretofore been made between the parties". The court cites Proctor v. Foster, 107 Okl. 95, 230 P. 753, in which it is held that cohabitation and reputation do not constitute marriage, but only evidence tending to raise a presumption of marriage from circumstances, "and in order to create said presumption it must be shown that the parties have openly cohabited as husband and wife for a considerable time, holding each other out, and recognizing and treating each other as such by declarations, admissions, or conduct, and are accordingly generally reputed to be such among their relatives and acquaintances and those who come in contact with them".

■ Cited also is Fender v. Segro, 41 Okl. 318, 137 P. 103, in which it is said: "An irregular, limited, or partial cohabitation is not sufficient to create a presumption in favor of marriage. It must be continuing and complete and such as is usual between persons lawfully married."

In the Richard case the court said: "The evidence in this case clearly shows that the cohabitation between plaintiff and defendant was at all times irregular, limited, and partial, and, therefore, such evidence was not sufficient as to cohabitation to create a presumption of the marriage contract and marital status, or to prove the same by circumstantial evidence."

The court in the Richard case then reviews the evidence in the record and says: "Concerning reputation, declarations, conduct, and admissions of the parties, there is evidence that defendant permitted plaintiff to state in his presence to members of her family and her acquaintances in Muskogee that plaintiff and defendant were husband and wife, and that there was some reputation in Muskogee that plaintiff was the wife of defendant, and also testimony that defendant admitted to parties in Muskogee that plaintiff was his wife, all of which testimony is unequivocally denied by defendant; there is, however, no evidence of any reputation, general or special, in the vicinity of defendant's home at Richardsville in McIntosh County that plaintiff and defendant were husband and wife, or that defendant advised any of his relatives, members of his household there,

or business associates, that plaintiff was the lawful wife of defendant."

The court then cites Davis v. Reeder, 102 Okl. 106, 226 P. 880, in which it is said: "The above cases 'all reflect the opinion that, where a party seeks to prove a marriage by facts and circumstances, it is necessary to prove a continuous cohabitation of the parties as husband and wife—that is, they had held themselves out as man and wife—and, second, that the parties were generally recognized and reputed to be man and wife by their friends and relatives."

The court next cites McKenna v. McKenna, 180 Ill. 577, 54 N.E. 641, in which the Supreme Court of Illinois said: "The reputation, at least, is divided, and is not sufficient proof of marriage."

The court also cites Laurence v. Laurence, 164 Ill. 367, 45 N.E. 1071, and Jackson v. Jackson, 82 Md. 17, 33 A. 317, 34 L.R.A. 773.

In the last named case it is said that the law allows evidence to be given of a general reputation and none other, and that evidence cannot be received to show a partial, limited, or qualified repute.

The court next cites Wallace's Case, 49 N. J. Eq. 530, 25 A. 260, in which "matrimonial cohabitation" is discussed, and the New Jersey court quotes from In re Yardley's Estate, 75 Pa. 207, wherein it was said: "But it is a misnomer to call the visits of Howard Yardley to Elizabeth Sithens cohabitation. It was lacking in its chief element,—constancy of dwelling together. * * * His visits to her were of an irregular kind, and though frequent and continual, bore no resemblance to married life."

 This opinion states that matrimonial cohabitation is where the parties "have the same habitation, so that where one lives and dwells, there does the other live and dwell always with him".

The opinion likewise lays down the rule that the repute must be general, extending to the friends and relatives of both parties, with whom their daily lives are spent, and such repute must not be divided.

 In the case of Commonwealth v. Stump, 53 Pa. 132, 91 Am.Dec. 198, it is said: "Reputation and cohabitation at best are only presumptive proofs, and, where either of these grounds fails, the court should not allow the presumption of marriage to be built upon the other."

After stating the steps taken on the trial of the case at bar, we will endeavor to apply the principles announced in the cited cases to the situation before us.

A jury was had in this case and eleven issues were submitted for fact findings. In substance, these issues are: (1) Is the father of Lena McArthur unknown? No answer; (2) Is Mrs. McArthur the daughter of Tom Burnett? No answer; (3) Did Tom Burnett and Jennie Ho-we-ah, prior to the conception of Lena McArthur in 1904, enter into a mutual agreement, (1) to enter into the relation of husband and wife, (2) that such relation should be effective at the time of such agreement, (3) that such relation would be permanent, and (4) that such relation would be to the exclusion of all others? No answer.

(4) Did the parties after making such agreement consummate same by cohabitation as man and wife prior to the conception of Lena McArthur? No answer; (5) did the said parties openly and mutually hold themselves out to the public as man and wife? No answer; (6) Did Jennie Ho-we-ah know of the existence of the marital relation between Burnett and any one else at the time Lena was conceived? No answer.

The trial court next instructed the jury that if they answered issue 6 "no", then to answer the next issue, being No. 7: "Do you find from a preponderance of the evidence that prior to the conception of Lena McArthur that Jennie Ho-we-ah used reasonable diligence to ascertain whether or not Tom Burnett had a living wife?" To which the jury answered, "No". And in answer to issue No. 8, the jury found that if she had used reasonable diligence she would have discovered that Burnett had a living wife; (9) "Do you find from a preponderance of the evidence that at and prior to the conception of Mrs. McArthur that the sexual relation, if any, between Tom Burnett and Jennie Ho-we-ah was illicit?" To which they answered, "Yes". (10) Did the parties assume the rights, duties and obligations of the marital relation? No answer; and (11) Prior to the conception of Lena McArthur, did Jennie Ho-we-ah have such information as would have caused a reasonably prudent person to make such investigation as, pursued with reasonable diligence, would have disclosed that Burnett was married? No answer.

The defendants, Anne Valliant Burnett Hall, the surviving daughter of Tom Bur-

nett, and born to his union with Mrs. Ollie Lake Burnett, to whom he was married in 1891, and at all times pertinent to the facts before us, and another devisee under Burnett's will, Charlie Hart, requested a peremptory instruction in their behalf, but same was not given by the trial court.

They next moved for judgment notwithstanding the verdict and, in the alternative, judgment on the incomplete verdict.

The trial court found that the evidence adduced was insufficient to support any finding favorable to the plaintiff on either issue No. 3 or issue No. 9, and sustained defendants' motion for judgment non obstante veredicto, but also held that their motion for judgment on the verdict was immaterial, and declined to render judgment on the verdict.

The court rendered judgment dismissing plaintiff's suit with prejudice. Lena McArthur and husband appeal and present ten points for review.

The first point asserts that numerous witnesses testified to facts showing a common law marriage between Burnett and Jennie Ho-we-ah, beginning prior to the conception of Lena, and that such relation continued until the latter part of 1910, and therefore the trial court erred in entering judgment for the defendants notwithstanding the verdict.

As illustrative of the evidence relied upon, we take the testimony of plaintiff's witness, Robert McCalmont, who had been propounded a question with reference to his knowledge, if any, of the general reputation as to Burnett and Jennie being husband and wife, and the question was so put that it was intended by counsel to cover generally the years 1904 to 1909, but on cross-examination he was asked to specifically state if he had not told the jury that it was generally known that Burnett and Jennie were husband and wife in 1904, and that such was the general reputation, but the witness promptly denied making any such statement. He said: "Not in 1904", and the question was asked him: "What year was it?" And he answered again: "Not in 1904". He was then asked: "What year was it, that general reputation or marriage, then?" And he answered: "It was my recollection from the neighborhood, from the last of, well, 1904 to 1910 or 1911".

He was then asked: "The latter part of 1904 it was known, then it was well known that Tom Burnett and Jennie Ho-we-ah were husband and wife, that's what you said yesterday, isn't it?" To which he answered: "Yes, sir, that was the general talk".

Without attempting to quote from or give the substance of the testimony of all of the other witnesses, relied upon by appellant, we are of opinion that such testimony is insufficient to raise the issue of "general repute" as to the status of Burnett and Jennie Ho-we-ah, as such repute is defined by the Oklahoma decisions.

According to such holdings, the repute, if any existed in Oklahoma in, around and near where Jennie lived, and where Burnett visited, during the years pertinent to the case, such was a "divided repute".

There seems to be no evidence tending to prove that Burnett ever lived in Oklahoma, in the sense that he had a domicile there.

That his home—his residence—was in the state of Texas, where he had a lawful wife and child, is undisputed. He maintained no home in which he and Jennie lived as man and wife.

After the baby was born, the evidence goes no further than to show that he purchased a tent for a home for Jennie and provided for her and Lena and a little son, who was born later, and that he visited them at times.

We take it that testimony must be introduced to show the "general repute", on which a presumption of marriage must be predicated, prior to the time of the conception of the plaintiff Lena, if an issue of fact is made, and we next note the testimony of certain of appellant's witnesses as to Burnett's association with Jennie prior to the birth of the appellant and prior to the time in which she must have been conceived.

Appellant adduced the following testimony from Mrs. Pearl Paschal Howard, who is a daughter of R. H. Paschal, one of the owners of a store, in the settlement known as Red Store, where Jennie lived with her grandmother Kerts-su-mah, in a tent. She testified that Jennie stayed away at the Chilocco School during the Fall and Winter of 1903 and that witness was at home when Jennie returned from the school, "after Spring or * * * a little bit later", so she thought; that Jennie went to work at Walter Silcott's house and spent her nights in her grandmother's tent; that

729

witness was about 16 years old, at such time, and knew Tom Burnett. She was then asked if Burnett "kept company with Jennie", after Jennie came home from school, and she answered: "Not at that time, I just saw him around there." She heard of Jennie being pregnant and testified that she saw Burnett with Jennie on several occasions during the time Jennie was pregnant. She testified that prior to Lena's birth, Burnett slept in her father's store, "when he was in the Red Store vicinity", and usually ate his meals in her father's home; that after Lena was born, Burnett purchased a tent for Jennie from her father's store; that Burnett would stay in that vicinity for periods of ten days and that he must have stayed in Jennie's tent, for she saw him there.

She was asked whether or not she knew, "in 1905, 6 and 7, at the Red Store north of Lawton where your father's store was located, as to what the reputation was, the general reputation of Tom Burnett and Jennie with reference to being man and wife", and she answered, "Yes", and then these questions were asked and answered: "What was that reputation with reference to being man and wife?" Answer: "It was known they were living together."

Question: "That's about all you could say?" Answer: "Yes."

Cynthia Webb, who testified to the effect that she was about twelve years old in 1904, said she knew Jennie and Burnett, and that she lived in the Red Store neighborhood, and when asked, "When did he start going with Jennie?" (meaning Burnett), she answered, "Oh 1904."

Question: "How long did he go with her?" Her answer was: "Several times."

These are the only witnesses whose testimony is cited by appellant as tending to prove that Burnett "went with" Jennie prior to June, 1904.

We submit that this testimony is insufficient to raise the issue of cohabitation between Burnett and Jennie "prior to June, 1904", or to raise the issue of the general reputation as to these persons being husband and wife. So far as we find, from the voluminous statement of facts, no effort was made to establish any "general repute" as to the status of these persons prior to the time when appellant must have been conceived either in Oklahoma, or elsewhere.

It seems significant to us that appellant did not undertake to prove the "general repute" among Burnett's relatives, acquaintances and business associates, as applied to the status of the parties.

The only declarations adduced on the trial of the instant suit are those credited to Burnett, in which he is said to have called Lena his child and Jennie his wife.

No witness testified to any declaration on the part of Jennie tending to show that she and Burnett were husband and wife.

On the other hand, when Jennie went to the Government official to register her child (as was required of her) it was shown that she declined to give the name of Lena's father, and that the registration role showed such father to be "unknown". She did not give her child Burnett's name.

This was far from the act of one who believed she was lawfully married to the man who was responsible for the birth of her child, whoever he may have been.

Furthermore, if Jennie had openly declared that she and Burnett were husband and wife she, if living, and her child Lena, would be compelled, under the undisputed facts in this case, to rely upon the "good faith" of Jennie, in entering into the marriage relation with a man, who then had his residence and claimed his citizenship in the State of Texas, where he had a lawful wife and child.

Such cases as Defferari v. Terry, 128 Tex. 521, 99 S.W.2d 290, and Walker v. Walker's Estate, Tex.Civ.App., 136 S.W. 1145, writ refused, are authorities holding that, under such facts and circumstances as those surrounding Jennie Ho-we-ah when she met and knew Burnett, she could not claim good faith in entering into the relationship of husband and wife, even if the evidence had shown that she so did prior to the conception of appellant.

The issue of Jennie's "good faith" is presented in appellant's point No. 2.

■■■ Appellant's claim is predicated on the provisions of Sect. 8420, R. L. 1010, Sect. 11303, C. O. S. 1921, 84 O. S. 1941 § 215, which provides in part as follows: "The issue of all marriages null in law, or dissolved by divorce, are legitimate", and we find that such Oklahoma statute is not unlike the Texas statute (Art. 2581, Rev. Civ. Statutes), but we find that no reliance may be placed in the provisions of such law because the evidence fails to establish that there was a common law marriage between Burnett and Jennie Ho-we-ah into which she entered "in good faith".

We do not consider it necessary to discuss the other points found in appellant's brief, believing that what we have said properly disposes of this case.

The judgment is affirmed.

## On Motion for Rehearing

Complaint is made, in the motion for a rehearing, of language used by us in our opinion, beginning near the bottom of page 11, [169 S.W.2d 729], wherein, in discussing the testimony adduced by the plaintiff for the purpose of establishing cohabitation between Jennie Ho-we-ah and Tom Burnett, prior to the time Lena was conceived, we said: "We submit that this testimony is insufficient to raise the issue of cohabitation between Burnett and Jennie 'prior to June, 1904', or to raise the issue of the general reputation as to these persons being husband and wife."

A careful reading of our opinion will disclose that we held that the testimony adduced does not support these two most material and indispensable issues on which the plaintiff must rely.

In order to meet the complaint and eliminate any question that might be raised because of our having used the word "insufficient", we here and now hold that there is no evidence of probative force tending to establish cohabitation between these persons, prior to the conception of Lena McArthur, and none such tending to establish a general reputation as to such persons being husband and wife, prior to such conception.

Like complaint is made, in the motion, of the language used by us in our opinion wherein we discussed the testimony adduced to establish a general reputation existing as to Burnett and Jennie being husband and wife, in which we said: "Without attempting to quote from or give the substance of the testimony of all of the other witnesses, relied upon by appellant, we are of opinion that such testimony is insufficient to raise the issue of 'general repute' as to the status of Burnett and Jennie Ho-we-ah, as such repute is defined by the Oklahoma decisions." (Opinion, page 9 [169 S.W.2d 728]).

To meet this complaint and eliminate any question that might be raised because of our having used the word "insufficient", we here hold that there is no evidence of probative force tending to establish a general reputation as to such persons being husband and wife, at any time, as such general repute is defined by the decisions of the State of Oklahoma.

The plaintiff having wholly failed to establish a prima facie case by the introduction of evidence of probative force touching upon the issues of cohabitation prior to the conception of Lena and of a general reputation existing that Burnett and Jennie were husband and wife, it may not be out of place for us to point out that the defendants introduced oral and written and public record evidence wholly refuting the allegations and claims of the plaintiff; all of which comes from disinterested witnesses. It is undisputed that in the early part of 1904 Jennie went to work for Walter Silcott at a wage of $2 per week; that one Anna M. Deyo was an assistant field matron and that among her duties was to see after the morals of the Indian girls, and on December 12, 1904, after Jennie's condition became apparent, she wrote a letter to Col. Randlett, the Indian agent, telling him that Jennie had been betrayed and that she was living with her grandmother, who was dying with tuberculosis. Col. Randlett replied immediately, advising that Jennie be brought before an officer and put under oath to tell who, whether an Indian or white man, was guilty of her down fall.

It is apparent from this evidence that there, in the very community in which Jennie lived, at that time, a "general repute" as to Jennie and Burnett being husband and wife was not only not existent but simply impossible.

It is undisputed that after Lena was born, on March 29, 1905, Jennie, as was required of her as an Indian and ward of the United States government, had Lena enrolled, and that Jennie refused to tell the name of Lena's father, and that, on the Indian Rolls, which were made under the direction of the Secretary of the Interior, instead of the name of a known father, there was entered on the Roll, "father unknown".

The Federal laws—Section 163, 25 U.S.C.A.—provide that these rolls shall be conclusive as to the ages of those enrolled and as to the quantum of Indian blood in each enrollee.

These Rolls show that the extent of Indian blood as to Lena could not be ascertained because her father was "unknown".

It is undisputed that Jennie married one Jesse Davis, on February 4, 1911, and that she lived with Davis until she died, on November 30, 1912, and that then Lena went to live with George and Mary Davis, a brother and sister-in-law of her step-father; and in 1913, a contest arose between George Davis and wife on the one side, and Jesse Davis on the other, on petition for the adoption of Lena. No adoption could be lawfully had without the consent of the Indian agent, and such agent wrote to one Dr. Louis A. Milne, who was at such time the physician for the Indians, and requested the doctor to make an investigation. Doctor Milne replied by letter, advising that Jennie became pregnant while working for Silcott, and that Silcott had Jennie make an affidavit to the effect that a certain white man (not Burnett) was the father of Lena. In the doctor's letter he advised that George and Mary Davis be given the child, so she would have a proper environment for her protection and to prevent her from going "the same way as her mother".

The very next year, court proceedings were had to determine the ownership of the allotments of Jennie and her grandmother, and the adoptive parents, George and Mary Davis, the step-father, Jesse Davis, and five Indians all swore that Jennie had never been married to any one except to Jesse Davis, and that Lena was an illegitimate child.

Bear in mind that these records were made by persons seeking the good of Lena, and we can find no incentive to make a false statement or record.

We did not discuss this portion of the record, in our opinion, because we deemed it proper to discuss the evidence most favorable to the plaintiff, in discussing the correctness of the trial court's judgment rendered non obstante veredicto, but we are frank to say here and now that these records, made many, many years before this suit was filed—records that could not have been made in contemplation of any such suit as is before us, and made by what we consider disinterested persons—wholly refute any claim of cohabitation and any claim of a common law marriage, based upon general repute.

Our holding is bottomed on the failure of appellant to introduce evidence of probative force tending to establish the essential facts upon which a recovery may be had.

The motion is overruled.

McDONALD, Chief Justice (concurring).

The evidence relied upon to establish plaintiff's claim of being a child of Tom Burnett, and her claim of being legitimate by reason of the Oklahoma statute, is entirely circumstantial in character. To establish such claim, the burden was upon plaintiff to prove: First, that she was a child of Tom Burnett; second, that Tom Burnett and plaintiff's mother entered into a common law marriage; third, that the marriage took place prior to or at the time of conception; fourth, that plaintiff's mother entered into the marriage in good faith.

To begin with, it is necessary to resort to inference to establish the marriage. Then it is necessary to pile inference upon inference to establish that the marriage took place before conception. And it is necessary again to pile inference upon inference to establish Jennie's good faith. Elementary rules of circumstantial evidence forbid that this be done.

Our conclusion is reached, not upon the evidence tending to disprove the marriage, but upon the lack of any evidence of probative value tending to prove the essential facts.