William KURTZ, Appellant,

v.

Linda K. (Kurtz) JACKSON, Appellee.

No. 92–00784–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 5, 1993.

Rehearing Denied Aug. 31, 1993.

Gerald P. DeNisco, Eva Martinez-Guzman, Houston, for appellant.

Robert M. Welch, Jr., Stewart Gagnon, Terriann Trostle, Houston, for appellee.

Before O'CONNOR, COHEN and PRICE*, JJ.

## OPINION

O'CONNOR, Justice.

We are asked to decide if the term "cohabitation" in a marital settlement agreement includes remarriage. The trial court found it did not and denied William Kurtz payment of his homestead lien. We find it did, and reverse.

William Kurtz and Linda Jackson were divorced on September 16, 1983. As part of their divorce, they executed a marital property and settlement agreement. By the agreement, Jackson received the homestead subject to a lien to Kurtz for $75,-000.[1] The agreement states:

Schedule A

Properties and Liabilities to Wife

I. The following properties, rights and interests shall be the separate property of wife:

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. A few years after the divorce, Kurtz and Jackson agreed to reduce the lien to $65,000.

1. The residence and lot located at 5637 Briar Drive, Houston, Texas, together with the insurance thereon. Husband agrees to execute in favor of Wife a Special Warranty Deed reflecting the transfer of his interest in said property, subject to a lien of $75,000, without interest, payable to Husband upon sale, transfer or trade of the residence or cohabitation by Wife.

By the terms of the agreement, Kurtz was entitled to collect the lien if Jackson sold, transferred, or traded the house, or upon her "cohabitation."

In 1989, after Jackson remarried and began living in the house with her new husband, Kurtz sued Jackson to recover on the lien. Jackson filed a counterclaim alleging Kurtz breached his obligations under the agreement by not paying the private school expenses of their children, contractual alimony, and medical expenses.

At trial, the main issue for the court was whether the term "cohabitation" included marriage. If it did, Jackson was "cohabitating" in the Briar Drive home, and Kurtz was entitled to his money. If it did not, Kurtz was not entitled to his money. The trial court found Jackson was not cohabitating (even though she was living in the house with her spouse), rendered a take nothing judgment for Kurtz on his suit to enforce the lien, and-awarded Jackson $875 in contractual alimony, $2,979.29 in medical expenses, and $15,000 in attorney fees.

### Marital property and settlement agreement

In point of error one, Kurtz argues the trial court erred in holding the term "cohabitation" did not include marriage. We agree.

A marital property agreement, although incorporated into a final divorce decree, is treated as a contract. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex.1986). In construing a written contract, the court must determine the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). To achieve this, the court should consider the entire writing and give effect to all the provisions of the contract, so that none are rendered meaningless. *Id.* The court should not take one provision of a contract and give it controlling effect. *Id.* In harmonizing the provisions of a contract, the court should favor terms stated earlier in an agreement over later terms. *Id.*

If a contract is unambiguous, the courts will give effect to the intention of the parties as expressed in the agreement. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968). A contract is ambiguous only when there is a genuine uncertainty which of two or more meanings is correct. *Insurance Co. of North Am. v. Cypress Bank*, 663 S.W.2d 122, 124 (Tex.App.—Houston [1st Dist.] 1983, no writ). If there is but one reasonable interpretation of the contract, it is not ambiguous. *Id.* at 124–25. Where there is a question relating to the meaning of a contract, the court must take the wording of the instrument, apply the rules of construction, and settle on the meaning. *Aetna Life & Cas. Co. v. Gunn*, 628 S.W.2d 758, 760 (Tex.1982). Here, the parties agreed and the trial court found the agreement was not ambiguous. Thus, we can confine our review to the writing itself. *Id.*

The trial court, in interpreting the agreement, placed emphasis on Appendix D to the settlement agreement, which provides:

### Appendix D

### Support of the Wife

1.01 It is the desire of the Parties for Husband to provide certain continuing support for Wife after divorce. The support obligation of the Husband embodied in this Article is unrelated to the division of property in Article II and Article III of the Marital and Property Settlement Agreement, and is not intended in any way to constitute a form of payment to Wife for any rights or interest she may have in the community estate.

\* \* \* \* \* \*

### Amount and Duration of Support

Husband agrees to pay to Wife the sum of $500.00 per month alimony directly to Wife commencing on September 1, 1983 and continuing monthly thereafter until the first to occur of the following events when this obligation shall cease:

1. Death of Wife
2. Change of Managing Conservators
3. Remarriage of Wife
4. Cohabitation by Wife [fn]
5. July 1, 1989

[fn] Cohabitation is defined as when a man resides in Wife's house with Wife or when Wife resides in another man's house.

■ The trial court concluded that the parties meant for the terms "Remarriage of the Wife" and "Cohabitation by Wife" to have different meanings because the term "cohabitation" was defined in Appendix D. We note, however, the preface to Appendix D specifically states the support obligation of Kurtz in Appendix D *"is unrelated to the division of property in Article II."* (Emphasis added.) The homestead lien is part of Article II, Schedule A.

■ The only reasonable meaning of "cohabitation" in Schedule A is that the term includes living with a man, whether married to him or not.[2] The parties agree Jackson lives in the Briar Drive house with her new husband. Thus, by our holding, Kurtz is entitled to recover on the lien.

We sustain the point of error and render judgment for Kurtz.

### Bill of exception

■ In point of error two, Kurtz argues the trial court erred in excluding and refusing to consider the testimony of Kurtz and Lindsey Short. During trial, Kurtz at-tempted to present his own testimony and that of his lawyer, Short, to explain the reason behind using the word "cohabitation" in the agreement. The trial court refused to permit the introduction of this testimony, and Kurtz preserved it in a bill of exception.

As stated earlier, we hold the agreement is unambiguous. Thus, it was not necessary for us to refer to extrinsic evidence to determine the intent of the parties. *City of Pinehurst,* 432 S.W.2d at 518.

We overrule point of error two.

### Attorney fees for Jackson

In point of error three, Kurtz argues the trial court erred in awarding Jackson's attorney fees because the evidence is not sufficient to support the award, and the attorney fees were not segregated. The judgment awarded Jackson $15,000 for attorney fees for her counterclaims against Kurtz, based on Kurtz' breach of contract for failure to pay contractual alimony ($875), and reimbursement for medical expenses ($2,979).

■ The trial court has the discretion, based on the evidence, to award attorney fees; on appeal, we will not reverse the award without proof of abuse of that discretion. *Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 881 (Tex.1990) (the court abused its discretion in awarding only $150 in attorney fees, and the Supreme Court rendered fees for $22,500). The burden of proof on attorney fees rests with the party who asks for them. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex.1991). The trial court should award fees that are "reasonable and necessary." *Id.* The decision of what is reasonable is a question for the trier of fact. *Id.* at 12.[3]

---

**2.** Cohabitation is defined by the 3 Oxford English Dictionary 449 (2d ed. 1989) as: "1. Dwelling or living together; community of life.... 2. Living together as husband and wife (often with the implication of not being married)." Black's Law Dictionary 236 (5th ed. 1979), defines cohabitation as, "To live together as husband and wife." We note that Tex.Fam.Code Ann. § 3.06 (Vernon 1993) "Living Apart," states that a married couple living apart "without cohabitation" for three years may get a divorce. The section implies that a married couple living together is "cohabitating."

**3.** We repeat what the Supreme Court has said, but note our confusion. In one opinion, the Supreme Court said the decision on attorney fees is within the trial court's discretion, *Ragsdale,* 801 S.W.2d at 881; in another opinion, the Supreme Court said it was for the trier of fact.

Stewart Gagnon, Jackson's attorney, testified about his attorney fees. He testified he and his firm incurred fees and expenses in the total amount of $33,032.98. Gagnon said his normal fee was $325 an hour, but he only charged Jackson $300 an hour.

██ Kurtz' attorney cross-examined Gagnon about the attorney fees. During the cross-examination, Kurtz did not ask Gagnon to identify the fees related to the counterclaim. Because he did not object to the failure of the trial court to segregate the attorney fees between the claims, he has waived that point. *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 823 (Tex.1985); TEX.R.APP.P. 52.

We overrule point of error three with reference to the attorney fees awarded Jackson.

### Attorney fees for Kurtz

██ Kurtz requested attorney fees in his brief to this Court. In his original petition, Kurtz requested attorney fees for the trial and attorney fees in the event of an appeal. At trial, his attorney testified that he incurred at least $9,000 in attorney fees up to the date of trial, and in the event of an appeal it would cost $7,500 to appeal to the court of appeals and $5,000 to appeal to the Supreme Court. Because we have sustained Kurtz' point of error challenging the trial court's refusal to enforce his lien, we remand the case back to the trial court to award Kurtz attorney fees.

We reverse the trial court's judgment and render judgment for Kurtz for his lien and award him $65,000. We remand the case to the trial court to award Kurtz attorney fees, and we affirm the award of $15,-000 to Jackson for attorney fees.

*Stewart Title Guar. Co.*, 822 S.W.2d at 12. One, but not both, of the statements is correct.