Joanne ALLEN, Appellant,

v.

Dennis Lee ALLEN, Appellee.

No. 04–97–00160–CV.

Court of Appeals of Texas,
San Antonio.

Feb. 25, 1998.

Louis LeLaurin, III, LeLaurin & Kessler, L.L.P., San Antonio, for Appellant.

Kerwin B. Stephens, Graham, for Appellee.

Before STONE, GREEN and ANGELINI, JJ.

## OPINION

GREEN, Justice.

■ In this appeal, arising from a suit for breach of an agreement incident to divorce, we must decide whether the trial court submitted to the jury a proper definition of the term "cohabitate." Because we believe the definition was improper, we reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to an agreement incident to divorce, Dennis Allen agreed to pay Joanne Allen $1,100 per month from October 1989 through February 2009; however, his obligation would terminate if one of several enumerated events occurred, including Joanne's cohabitation with another man. Joanne received no payment from Dennis after September 1991 and subsequently brought suit to collect damages for Dennis' breach of their agreement. At trial she introduced the agreement, along with evidence showing Dennis owed her $67,100 under their agreement. Dennis took the position that he no longer owed Joanne any money under their agreement because she cohabited with another man, and he elicited testimony purporting to support his contention.

The evidence at trial showed Joanne had been involved in two, sequential romantic relationships since her divorce. Joanne had a sexual relationship with both of the men, who spent the night with her, although not every night. The first man with whom Joanne was involved kept his lawnmower, some tools, and a picnic table at Joanne's house, and brought a change of clothes with him when he stayed overnight. He paid rent on an apartment in another city, and he and Joanne visited each other. The second man kept a lawnmower at Joanne's house, did her yard work, loaned her a refrigerator which she kept in a storage room, occasionally bought groceries for meals cooked together, slept at her house almost every weekend, and brought a change of clothing with him when he stayed overnight. He listed his mother's house as his address of record while he was having a house built. Neither of these men shared living expenses or financial resources with Joanne.

The parties discussed the jury charge with the court at a bench conference. Dennis tendered a proposed jury charge defining "cohabitate." Joanne objected to the legal accuracy of this definition and offered an alternative as found in a legal dictionary. The trial court overruled Joanne's objection and included Dennis' definition in its jury charge.[1] The jury found Joanne had cohabited with another man, and the trial court entered a take nothing judgment in favor of Dennis.

### STANDARD AND SCOPE OF REVIEW

■ We review the trial court's decision to submit an explanatory instruction or definition with the abuse of discretion standard. *See Plainsman Trading Co. v. Crews,* 898 S.W.2d 786, 791 (Tex.1995); *Munoz v. Berne Group, Inc.,* 919 S.W.2d 470, 471–72 (Tex. App.—San Antonio 1996, no writ). Trial courts possess considerably more discretion in submitting instructions and definitions than they have in submitting questions. *Munoz,* 919 S.W.2d at 471; *Harris v. Harris,* 765 S.W.2d 798, 801 (Tex.App.—Houston [14th Dist.] 1989, writ denied).

■ However, where the trial court actually provided the jury with a definition, the inquiry on appeal is whether the definition is "proper." *See Oadra v. Stegall,* 871 S.W.2d 882, 889–90 (Tex.App.—Houston [14th Dist.] 1994, no writ); *M.N. Dannenbaum, Inc. v. Brummerhop,* 840 S.W.2d 624, 631 (Tex. App.—Houston [14th Dist.] 1992, writ denied). This review is de novo. *See Oadra,* 871 S.W.2d at 890 (reviewing definition of "gift"); *Harris,* 765 S.W.2d at 801 (reviewing definition of "marital property"); *Bennett v. Bailey,* 597 S.W.2d 532, 533 (Tex.Civ.App.— Eastland 1980, writ ref'd n.r.e.) (reviewing definition of "unconscionable").

1. Neither party takes issue with whose burden it was to tender the definition.

A trial judge provides jurors with definitions to assist them in answering questions and rendering a verdict. *Harris,* 765 S.W.2d at 801. We note that "[o]rdinarily the trial court is required to define or explain only those words or phrases given a distinctive meaning by law, and words having no special legal or technical meaning apart from their ordinary usage need not be defined." *Green Tree Acceptance, Inc. v. Combs,* 745 S.W.2d 87, 90 (Tex.App.—San Antonio 1988, writ denied); *see also White v. Liberty Eylau Indep. Sch. Dist.,* 920 S.W.2d 809, 812 (Tex.App.—Texarkana 1996, writ denied); *State Dep't of Highways & Public Transp. v. Zachary,* 824 S.W.2d 813, 818 (Tex.App.—Beaumont 1992, writ denied); *Allied Gen. Agency, Inc. v. Moody,* 788 S.W.2d 601, 607 (Tex.App.—Dallas 1990, writ denied). As a result, words of ordinary meaning, readily understandable by the average person, are not normally submitted in a breach of contract action like the one in this case. *See, e.g., Green Tree,* 745 S.W.2d at 90 (holding "gross and willful misconduct" need not be defined for jury to decide whether an option contract was breached); *see also Allen v. Allen,* 717 S.W.2d 311, 313 (Tex.1986) (treating a settlement agreement incident to divorce as a contract).

If we determine the trial court gave an improper definition, we then proceed to inquire whether the error was harmless. Tex.R.App. P. 44.1(a)(1); *Brummerhop,* 840 S.W.2d at 631. To decide whether any error is reversible, we review the pleadings of the parties, the evidence, and the entire charge in determining whether the error amounted to such a denial of the rights of the complaining party that it probably caused the rendition of an improper judgment. Tex.R.App. P. 44.1(a)(1); *Oadra,* 871 S.W.2d at 890.

### ARGUMENT AND AUTHORITIES

The test of the propriety of a definition is "the reasonable clearness of the definition[ ] to enable jurors to understand the word." *Gulf Ins. Co. v. Vela,* 361 S.W.2d 904, 906 (Tex.App.—Austin 1962, writ ref'd n.r.e.); *see also Harris,* 765 S.W.2d at 801.

Joanne argues the trial court erred in concluding the following definition was proper:

As used here, the term "cohabitate" does not require living together, claiming to be married, in the relationship of husband and wife. It can include an irregular, limited, or partial living together for the purpose of having sexual relations.

She contends the submitted definition finds no support in Texas law and suggests a proper definition was at the trial court's disposal as contained in *Kurtz v. Jackson,* 859 S.W.2d 609 (Tex.App.—Houston [1st Dist.] 1993, no writ) and Black's Law Dictionary.

The agreement in *Kurtz* provided that the ex-husband would collect the lien on a residence "upon sale, transfer or trade of the residence or cohabitation by Wife" but gave no definition of cohabitation pertaining to that provision. 859 S.W.2d at 611. After the ex-wife remarried, the ex-husband filed suit to collect the lien. *Id.* The trial court concluded that "cohabitation" did not include remarriage and rendered a take-nothing judgment for the ex-husband. *Id.* Reversing the trial court's decision, the court of appeals stated, "The only reasonable meaning of 'cohabitation' in [the provision in question] is that the term includes living with a man, whether married to him or not." *Id.*

The *Kurtz* court consulted dictionary definitions in arriving at its own. 859 S.W.2d at 612 n. 2. For example, according to 3 OXFORD ENGLISH DICTIONARY 449 (2d ed.1989), cohabitation is "1. Dwelling or living together; community of life. . . . 2. Living together as husband and wife (often with the implication of not being married)." *Id.* Additionally, BLACK'S LAW DICTIONARY 260 (6th ed.1990) defines cohabitation as: "To live together as husband and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations." Joanne tendered the Black's Law Dictionary definition to the court upon objecting to Dennis' proposed charge.

Dennis replies that the court used a proper definition as derived from *McArthur v. Hall,* 169 S.W.2d 724 (Tex.Civ.App.—Fort Worth 1943, writ ref'd w.o.m.). Dennis argues that *McArthur,* a case in which the issue was

whether a common law marriage existed, instructs what cohabitation entails, outside the context of marriage:

> An irregular, limited, or partial cohabitation is not sufficient to create a presumption in favor of marriage. It must be continuing and complete and such as is usual between persons lawfully married.

169 S.W.2d at 726. Dennis suggests there are two forms of cohabitation: one occurring in the context of a marital relationship, and one outside. Because the language from *McArthur* tells us what form of living together does not give rise to the presumption of marriage, Dennis argues, then it necessarily instructs what constitutes "cohabitation" outside the context of marriage.

 We believe the definition posed in this case was not reasonably clear, especially when no definition was required at all; that is, "cohabitation," as used in the Allens' agreement, was unambiguous and readily comprehensible by the jury. Rather than inform the jury of what "cohabitation" is, however, the submitted definition tells the jury what the term "does not require" and what it "can include." The one proposed by Dennis and adopted by the court is not proper because it binds the jury to the court's own creative definition, rather than what the jury would ordinarily understand the parties to mean. The disputed definition is confusing and misleading, potentially causing a jury to characterize as "cohabitation" any number of situations falling outside the ordinary meaning of the word. In particular, we do not believe "cohabitation" would encompass, without more, situations involving a frequent overnight guest or someone who stores personal property at someone else's home. For these reasons, we believe the error was harmful, amounting to such a denial of the rights of the complaining party that it probably caused the rendition of an improper judgment.

### CONCLUSION

Because we sustain the sole point of error before us, we reverse the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion.