**U.S. RESTAURANT PROPERTIES OPERATING L.P. and U.S. Restaurant Properties, Inc., Appellants,**

v.

**MOTEL ENTERPRISES, INC., Appellee.**

No. 09–99–127 CV.

Court of Appeals of Texas, Beaumont.

Submitted March 30, 2000.

Decided July 20, 2000.

Publication Ordered Sept. 7, 2000.

James R. Jordan, Dallas, for appellant.

Robert T. Cain, Jr., Zeleskey, Cornelius, Hallmark, Roper & Hicks, L.L.P., Lufkin, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

PER CURIAM.

Appellee Motel Enterprises, Inc. (Motel) brought suit to enforce a "put option" provision in a purchase and sale contract entered into with appellants U.S. Restaurant Properties Operating L.P. and U .S. Restaurant Properties, Inc. (collectively USRP). Bar S Restaurants, Inc. (Bar S) was also a party to said contract, but is not a party to the instant litigation. Said contract was executed by the parties on April 30, 1996. The pertinent portion of the "put option" is set out as follows:

1. *Put Option.* At any time after the eighteenth (18th) month following the execution of this Agreement, Motel shall have the right to cause USRP, upon delivery of ten (10) days' prior written notice, to purchase that promissory note (the "Note") of even date herewith, executed by [Bar S] and payable to the order of Motel in the principal sum of $500,000.00, the form of which is attached hereto as Exhibit A. The purchase price ... shall be in an amount equal to 110% of the then outstanding principal balance of the Note (which principal balance shall not include accrued interest). Motel may not exercise the put option provided by this paragraph at any time there is a continuing material uncured default by [Bar S] under the Lease Agreement (the "Lease Agreement") described in the Note and shall terminate if [Bar S]'s right to possession under the Lease Agreement is terminated or if USRP forecloses on [Bar S]'s capital stock pledged to USRP pursuant to that Security and Pledge Agreement dated as of April 30, 1996, executed by and between [Bar S] and USRP.

The "Lease Agreement" mentioned in the above "put option" provision contained a section entitled, "17.0 *DEFAULT, REMEDIES* " which included the following pertinent definition: 17.1 *Default.* The occurrence of any of the following shall constitute a material default and breach of this Lease by Tenant [Bar S]:

. . . .

(d) A failure by Tenant to observe and perform any other provision of this Lease to be observed or performed by Tenant, where such failure continues for twenty (20) business days after written notice thereof by the Landlord [USRP] to the Tenant. However, if the nature of the default is such that the default cannot be reasonably cured within the twenty (20) business day period, Tenant shall not be deemed to be in default if Tenant shall within such period of time commence such cure and thereafter diligently prosecute the same to completion;

. . .

The record reflects that on November 3, 1997, Motel sent written notice to USRP formally notifying USRP of Motel election to exercise the "put option." On November 12, 1997, USRP responded by letter stating that Motel could not exercise its "put option" because Bar S was in uncured material default under the terms of the lease agreement. Specifically, USRP's letter noted the following: "Since April, 1997, USRP has delivered seven (7) notices to [Bar S] of [Bar S]'s failure to maintain the properties in the manner required under the Lease. Upon such default, [Bar S] was required under the Lease to establish a trust account, which it has also failed to do." The lease agreement between USRP and Bar S contained the following provision:

8.1 Tenant [Bar S] shall at its sole cost and expense keep and maintain each of the Premises and Buildings, including sidewalks, landscaping and driveways located on the Premises, in good order and condition and repair, and shall suffer no waste with respect thereto. Tenant shall at its sole cost and expense make all needed repairs and replacements, interior and exterior, structural and nonstructural, ordinary and extraordinary, including but not limited to, roof, air conditioning and heating

systems, replacements of cracked or broken grass (sic), repair of parking areas and driveways, and shall keep the plumbing units, pipes and connections free from obstruction and protected against ice and freezing. Tenant shall at its cost and expense, adhere to all image standards and other requirements under the Franchise Agreement. Landlord [USRP] has no responsibility to maintain or pay for any part of the maintenance of any of the Premises.

■ Trial was before a jury. Evidence of repairs to, and disrepair of, the leased properties in question was abundant and hotly contested. Upon both parties resting their respective cases, the trial court submitted the following question to the jury, over the timely objection of counsel for USRP:

### QUESTION 1

Do you find that there was a material uncured default by Bar S under the lease agreement on *Nov 3 1997?*

*Instruction:* You are instructed that a material uncured default in the lease agreement exists if there are substantial and significant repairs to the leased property which remained to be made on the date in question.

To the above question conditioned on the "instructed" definition of "material uncured default," the jury answered "No." The only other question asked of the jury was to apportion attorney's fees.

At trial, USRP objected to the above-quoted definition because the lease agreement, under section 17.0, explicitly set out the conditions for which Bar S would be considered to be in material default by USRP. Therefore, "material default" was already defined in section 17.0. Motel does not contend that it had no knowledge of the terms and conditions of the lease agreement in question. Indeed, Motel was obviously aware of said terms and conditions as the purchase and sale contract between it and USRP explicitly refers to said lease agreement and the "material uncured default" provision. There are no allegations of fraud or misrepresentation on the part of USRP nor is there a contention that the terms of the lease agreement between Bar S and USRP are somehow unconscionable or are impossible to perform.

■ We agree with the general rule, as recognized in Motel's brief, that in deciding what instructions and definitions to submit to the jury, a trial court is allowed even greater discretion than that permitted when submitting questions. *See Allen v. Allen,* 966 S.W.2d 658, 659 (Tex.App.—San Antonio 1998, pet. denied). However, under the circumstances of the instant case involving two business entities entering into otherwise legally binding contracts apparently negotiated at arms-length, we feel the more appropriate rule of law provides that when contracting parties set forth their own definitions of the terms they employ, the courts are not at liberty to disregard such definitions and substitute other meanings. *See Fulton v. Texas Farm Bureau Ins. Co.,* 773 S.W.2d 391, 392 (Tex.App.—Dallas 1989, writ denied); *Hart v. Traders & General Ins. Co.,* 487 S.W.2d 415, 417–18 (Tex.Civ.App.—Fort Worth 1972, writ ref'd n.r.e.).

■ In the instant case, the trial court erred in submitting the definition of "material uncured default" where the lease agreement, upon which Motel's ability to exercise its "put option" rested, explicitly provided the proper definition. Because that was the lone controlling issue submitted to the jury, we further find the error probably caused the rendition of an improper judgment. *See* Tex.R.App.P. 44.1(a)(1). *See also Dutton v. Southern Pacific Transp.,* 576 S.W.2d 782, 786 (Tex. 1978) (an instruction that imposes a greater burden than the law requires is harmful because it reasonably could and probably did cause the rendition of an improper judgment). USRP's objection to submission of Question 1 for lack of an evidentiary basis preserved a "no evidence" review.

*See Steves Sash & Door Co. v. Ceco Corp.,* 751 S.W.2d 473, 477 (Tex.1988). However, we decline to engage in such a review because the erroneous definition was so seriously flawed remand for a new trial is in order so that, in the interests of justice, a proper adjudication of the parties respective positions may be had under a submission of the correct theory of potential liability. *See* Tex.R.App.P. 43.3(b). The judgment of the trial court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.