**Karl Eugene SCHNEIDER/Kay Luchie Schneider, Appellants,**

v.

**Kay Luchie SCHNEIDER/Karl Eugene Schneider, Appellees.**

**No. 03–99–00060–CV.**

Court of Appeals of Texas, Austin.

Nov. 18, 1999.

Rehearing Overruled Dec. 23, 1999.

Gary Calabrese, Law Office of Gary A. Calabrese, Austin, for Appellants.

James N. Higdon, Higdon, Hardy & Zuflacht, L.L.P., San Antonio, for Appellees.

Before Justices JONES, KIDD and PATTERSON.

MACK KIDD, Justice.

This appeal arises out of a family-law dispute following a divorce between appellant Karl Eugene Schneider and appellee Kay Luchie Schneider. After the trial court issued a final divorce decree and a subsequent agreed modification of that decree, Karl filed a motion for clarification and enforcement requesting the court to (1) impose a constructive trust upon certain monies Kay may receive in the future as a beneficiary under his Armed Services Survivor's Benefit Plan and (2) render judgment against Kay for money she purportedly owes him for the Plan's premiums and a wrongfully withheld child-support payment. Kay responded, as cross-plaintiff, with a request for the imposition of sanctions against Karl and an award of attorney's fees. The trial court denied the relief sought by each side. In separate issues, both parties now appeal the court's final order. We will affirm the trial court's judgment.

## BACKGROUND

Appellant Karl Eugene Schneider and appellee Kay Luchie Schneider were divorced in 1994. As part of the divorce decree, Karl was ordered to pay monthly child support for their daughter until the latter of either her eighteenth birthday or the month she graduated from high school. In its division of the marital estate, the court awarded Kay an interest in 31.9% of the military retirement payments Karl receives based on his twelve years of service in the United States Air Force. In addition to being awarded an interest in Karl's retirement benefits, Kay was also given an interest in the proceeds of Karl's Armed Services Survivor's Benefit Plan (the Plan). As a practical matter, the Plan takes the place of retirement payments upon a service member's death. It is an annuity payable to a beneficiary selected by the service member.

According to the original decree, Kay's interest in the Plan proceeds was to be limited to an amount equal to 31.9% of Karl's "disposable retired pay."[1] The court order prohibited Karl from ever

1. The trial court's order provided that Kay's interest would "... be limited to the 31.9% portion of the United States Air Force disposal [sic] retired or retainer pay arising from [Karl's] service in the United States Air Force awarded to Kay Luchie Schneider hereinabove." According to section 1408(a)(4) of Title 10 of the United States Code (1998), "disposable retired pay" is "the total monthly retired pay to which a member is entitled less amounts which ... are deducted ... to pro-

vide for an annuity to a spouse or former spouse to whom payment of a portion of such member's retired pay is being made pursuant to a court order under this section." 10 U.S.C.A. § 1408(a)(4) (1998). By defining Kay's percentage interest in the Plan in terms of Karl's disposable retired pay, it appears that the court intended for Kay to receive annuity payments under the Plan equal to the payments she would receive from Karl's monthly retirement pay.

modifying the election to name anyone other than Kay as the beneficiary under the Plan. Commensurate with the survivor benefits she was to receive under the Plan, Kay was ordered to pay 31.9% of the cost of the monthly premiums necessary to maintain the Plan.

In accordance with the terms of the court order, Karl designated Kay as a "former spouse beneficiary" under the Plan and attempted to have Kay's interest limited to an amount equal to 31.9% of his disposable retired pay. Notwithstanding this attempt, the Air Force refused to so limit Kay's interest in the Plan benefits. A year following the divorce, the Air Force continued to recognize Kay as the sole beneficiary of all the Plan's proceeds. In light of this unanticipated difficulty in carrying out the terms of the court's decree, the parties presented the court with a proposed agreed order modifying some of the terms of the original decree. Under the proposed modification, Kay was to pay the *entire* monthly premium required to maintain the Plan until the Air Force recognized and implemented the court-ordered 31.9% limitation on Kay's interest in the Plan's proceeds. In order to keep Kay apprised of the costs for which she was responsible, Karl was also ordered to provide on a monthly basis copies of his most recent Air Force retirement "pay stub" showing the exact amount of the Plan premium that was deducted each month from his retirement pay. All the terms of the final divorce decree not addressed in the modified order were to remain valid and unmodified. The court agreed to the modification.

Initially, Kay wrote checks to Karl each month for the full amount of the Plan premiums as indicated on the pay stubs. But eventually, Kay reduced the amounts she was paying Karl by 31.9%, reasoning that she was entitled to a credit for the amount of the premium that was being deducted from her portion of Karl's retirement pay each month. Karl felt that by reducing the amount she was paying him

directly, Kay was violating the decree by reimbursing him for less than the "full cost" of maintaining the Plan. Karl also claimed Kay owed him for a child-support payment that was wrongfully withheld from his retirement pay a month after his child-support obligation had ended. In addition to his disagreements with Kay, Karl became increasingly frustrated with the Air Force's continued refusal to recognize the limitation on Kay's interest in the Plan.

With these concerns in mind, Karl filed a motion for clarification and enforcement of the agreed order in which he requested the court to (1) issue a declaratory judgment or clarifying order imposing a constructive trust upon all Plan benefits Kay may receive in excess of the 31.9% granted to her in the decree and (2) render judgment against Kay for the amounts she purportedly owes for past premiums and the extra child-support payment. Kay responded with a request for sanctions on grounds that Karl's motion was frivolous, groundless, and brought in bad faith or for the purpose of harassment. Both parties requested an award of reasonable attorneys' fees.

After conducting a hearing, the court denied both parties' motions. Karl and Kay now appeal the court's order denying their requests for relief. In three issues, Karl challenges the court's overruling of his motion for clarification and enforcement. In four issues, Kay appeals the court's denial of her requests for the imposition of sanctions and award of attorneys' fees.

## DISCUSSION

### Abuse of Discretion

In his first and third issues, Karl complains that the trial court abused its discretion by (1) refusing to issue a declaratory judgment or clarifying order imposing a constructive trust upon any Plan benefits Kay might receive in excess of the 31.9% interest she was awarded in the decree

and (2) denying his request for award of attorneys' fees.

■ As both sides concede, in the event Kay survives Kàrl under the present circumstances, she will receive 100% of the proceeds of the Plan, as opposed to a lesser amount tied to her 31.9% share of Karl's disposable retirement pay that the court awarded her in the final divorce decree. Karl argues that, in order to carry out the terms as the court intended, a constructive trust should be imposed on the remainder of the Plan benefits that were not awarded to Kay, which Karl wishes to leave to his current spouse. He maintains that the court's refusal to impose a constructive trust in this situation was an abuse of discretion.

■ While we agree with appellant that a constructive trust might have been an appropriate remedy in this situation, we cannot conclude that the trial court's decision not to impose one was an abuse of discretion. The decision whether to impose a constructive trust is an equitable matter within the discretion of the trial court. *See Carr v. Weiss,* 984 S.W.2d 753, 767 (Tex.App.—Amarillo 1999, no pet. h.); *Tripp Village Joint Venture v. MBank Lincoln Centre, N.A.,* 774 S.W.2d 746, 750 (Tex.App.—Dallas 1989, writ denied). A trial court abuses its discretion only when it acts in an unreasonable and arbitrary manner or when it acts without reference to any guiding principles. *See Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985). This Court may not reverse for abuse of discretion merely because we disagree with a decision of the trial court. *See Buller,* 806 S.W.2d at 226; *Downer,* 701 S.W.2d at 242.

We first note that all the cases appellant cites in support of his argument are distinguishable from the circumstances presented here. *See, e.g., Hudspeth v. Stoker,* 644 S.W.2d 92 (Tex.App.—San Antonio 1982, writ ref'd); *Towne v. Towne,* 707 S.W.2d 745 (Tex.App.—Fort Worth 1986, no writ); *Jeffcoat v. Jeffcoat,* 886 S.W.2d 567 (Tex. App.—Beaumont 1994, no writ); *Sever v. Massachusetts Mut. Life Ins. Co.,* 944 S.W.2d 486 (Tex.App.—Amarillo 1997, writ denied). Each of these cases involved an appellate court's *affirmance* of a trial court's decision to impose a constructive trust. None involved a challenge to a trial court's decision *not* to impose a constructive trust at the request of a litigant. Cases discussing circumstances under which *imposing* a constructive trust was *not* an abuse of discretion offer little, if any, guidance on the circumstances under which *not imposing* such a trust *would* be an abuse of discretion necessitating a *reversal* by this Court.

Here, we cannot say that the trial court acted in an unreasonable and arbitrary manner or without reference to any guiding principles when it refused to impose a constructive trust. The trial court indicated in its conclusions of law that its decision was based, at least in part, on its belief that the relief Karl requested was preempted by federal law. The record indicates that the trial court was relying on section 1448(b)(2)(B) of Title 10 of the United States Code (1998). That section, entitled "Effect of former spouse election on spouse or dependent child," provides that, "... [i]n the case of a person with a [current] spouse or a dependent child, such an election [of a former spouse] prevents payment of an annuity to that [current] spouse or child. ..." 10 U.S.C.A. § 1448(b)(2)(B) (1999). Kay argues that this statute precludes the trial court from designating more than one beneficiary of the Plan; and she claims that in its practical effect, creating a constructive trust to preserve the amounts Kay receives in excess of her 31.9% share in the Plan for the benefit of Karl's future wife would be a designation of a second beneficiary in violation of the statute. In light of the apparent intent behind the federal statute to preclude the payment of any part of the annuity to a present spouse or dependent child when a former spouse has been elect-

**930**

ed as the Plan's beneficiary, we cannot say that the trial court's decision was unreasonable, arbitrary, or made without reference to any guiding principles. Although we express no opinion as to whether the doctrine of federal preemption does in fact bar the imposition of a constructive trust in this situation, we hold that the court's decision—in light of its concerns about federal preemption—was not an abuse of discretion.

■ We come to the same conclusion even if we assume the trial court was incorrect in its assertion that federal law precludes the application of a constructive trust. The Texas statute Karl cites in support of imposing a constructive trust in this situation states that the subsequent *actual receipt* by the non-owning party of property awarded to the owner in a divorce decree creates a fiduciary obligation and imposes a constructive trust. *See* Tex. Fam.Code Ann. § 9.011 (West 1998).[2] Here Kay has not actually received any Plan benefits. In fact, in the event the Air Force eventually recognizes the court-ordered division, or should Kay not survive Karl, she will never actually receive 100% of the benefits. The entire controversy surrounding the Plan is contingent on the occurrence of future events, and a constructive trust may not be necessary in the end to carry out the court's intent. Thus, we conclude that the trial court did not act in an unreasonable and arbitrary manner or without reference to any guiding principles when it declined to impose the equitable remedy of a constructive trust on possible future Plan disbursements. We overrule Karl's first issue.

■ We likewise reject Karl's argument in his third issue that the district court abused its discretion by refusing to

award him attorney's fees. Section 9.014 of the Texas Family Code provides that "[t]he court *may* award reasonable attorney's fees as costs in a proceeding under this chapter." (West 1998) (emphasis added). This statute does not entitle either party to attorney's fees; rather, it merely permits the court to award them. The decision to grant or deny attorney's fees under this statute is reviewed for an abuse of discretion. *See Cook v. Cameron,* 733 S.W.2d 137, 141 (Tex.1987); *Kurtz v. Jackson,* 859 S.W.2d 609, 612 (Tex.App.—Houston [1st Dist.] 1993, no writ). To prevail on this issue, Karl must prove that the trial court acted without reference to any guiding principles when it refused to award him attorney's fees. *See Downer,* 701 S.W.2d at 242. In this case, the trial court could have decided not to award Karl attorney's fees because he did not prevail in any of the relief he sought. Given the outcome of the proceedings and the deference we extend to trial courts in making these decisions, we cannot say that the trial court abused its discretion in refusing to award attorney's fees to Karl. We overrule Karl's third issue.

### Factual Sufficiency

In his second issue, Karl challenges the court's denial of his request to render judgment against Kay for her alleged failure to reimburse him for the full amount of the Plan premiums she was ordered to pay, as well as for a child-support payment that he claims the Air Force wrongfully withheld. In its findings of fact and conclusions of law, the court found that Kay had paid all monies she owed to Karl for the Plan premiums and that, if Karl were awarded the amounts he requested, he

**2.** In its entirety, section 9.011, entitled "Right to Future Property," states:

(a) The court may, by any remedy provided by this chapter, enforce an award of the right to receive installment payments or a lump-sum payment due on the maturation of an existing vested or nonvested right to be paid in the future.

(b) The subsequent actual receipt by the non-owning party of property awarded to the owner in a decree of divorce or annulment creates a fiduciary obligation in favor of the owner and imposes a constructive trust on the property for the benefit of the owner.

Tex. Fam.Code Ann. (West 1998).

would receive a windfall in an amount equal to 31.9% of the cost of the monthly premium. The court also concluded that Karl was not entitled to be reimbursed for the child-support payment that he claims was wrongfully withheld. Karl contends that the court's denial of his request was contrary to the overwhelming weight and preponderance of the evidence. We interpret this argument to be a challenge to the factual sufficiency of the evidence.

When reviewing a factual-sufficiency point, the trial court's findings of fact are reviewed using the same standards applied when reviewing the factual sufficiency of the evidence to support jury findings. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). As a result, when reviewing the factual sufficiency of the evidence to support a finding on which the appellant had the burden of proof at trial, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *see also Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986). In its role as fact-finder, the trial court is the sole arbiter of the witnesses' credibility and the weight to be given their testimony. *See Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744–45 (Tex.1986). It is not within the province of this Court to interfere with the trial court's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *See Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951); *K–Mart Corp. v. Pearson ex. rel. Ramos*, 818 S.W.2d 410, 413 (Tex.App.—Houston [1st Dist.] 1991, no writ). Even when there is conflicting evidence, the fact-finder's verdict on such matters is generally regarded as conclusive. *See Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 511–12 (1947); *Hallmark v. Hand*, 885 S.W.2d 471, 474 (Tex.App.—El Paso 1994, writ denied).

■ Having reviewed the record, we hold that there is sufficient evidence to support the trial court's failure to find that Kay was indebted to Karl for any of the monies he claimed she owed him. Although Karl contends that Kay failed to pay for the full amount of the Plan premiums as ordered by the court, we are convinced by the record that the reduced payments she made to Karl were proper in light of the premium payments that were deducted each month from her share of the retirement benefits. It is undisputed that the Plan's monthly premiums are deducted from Karl's gross pay in order to arrive at the "disposable retired pay," a percentage of which Kay is entitled to receive as retirement benefits, separate from the Plan benefits. Had Kay not been named the Plan's beneficiary and charged with the obligation to pay the monthly premiums, the retirement benefits Kay was entitled to receive would not have been reduced by the cost of the Plan premium. In other words, 31.9% of the deduction coming off the top of the gross pay amount would belong to Kay, but for her obligation to pay for the cost of the Plan. Because Kay's share of the retirement benefits is reduced by the monthly premium, Kay is in effect already paying for 31.9% of the Plan. When Kay was directly reimbursing Karl for the entire premium amount shown on the pay stub in addition to bearing the cost of the deduction, she was paying a total of 131.9% of the cost of the Plan premiums. For this reason, Kay rightfully reduced the amount she was directly paying Karl by 31.9%.

■ Likewise, we hold that there is sufficient evidence to support the conclusion that Karl failed to demonstrate that he was entitled to be reimbursed for an extra child-support payment that he claims was wrongly withheld from his retirement pay. Although Karl maintains that he overpaid child support when one payment was withheld a month after his obligation expired, there was credible testimony establishing

that the final child-support payment made at the beginning of June 1997 was for the *previous* month of May—the final month of his obligation. The court could have reasonably concluded that the child-support payments were paid in arrears instead of in advance and that no overpayment occurred. Furthermore, there was evidence suggesting that Karl was delinquent in paying child support from his earnings at Motorola. The evidence in the record suggests he stopped paying child support from his earnings at Motorola before his daughter graduated from high school, in which case he would owe Kay money. In light of this evidence, we conclude that the court's findings of fact upon which it denied his request for a monetary judgment against Kay were not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule Karl's second issue.

### Cross–Appellant

Having disposed of the three issues Karl raises on appeal, we now turn to the issues Kay raises as cross-appellant. In four issues, Kay contends that the trial court abused its discretion by denying her motion for sanctions and refusing her request for the attorney's fees she incurred at both trial and on appeal.

■ Pursuant to Rule 13 of the Texas Rules of Civil Procedure and Chapter 9.012 of the Texas Civil Practice and Remedies Code Annotated (West Supp.1999), Kay requested that sanctions be imposed against Karl because his suit was frivolous, groundless, and brought in bad faith or for the purpose of harassment. She contends that the court abused its discretion in refusing this request. However, in both her brief and at oral argument, cross-appellant failed to direct our attention to any evidence in the record supporting these allegations. Our own independent review of

the record also reveals no such evidence. Given the total lack of support for an imposition of sanctions, we cannot hold that the trial court abused its discretion in denying Kay's request. We overrule this issue.

■ In her remaining three issues, cross-appellant argues that the court abused its discretion by not awarding her attorney's fees. The trial court had the discretion to award reasonable attorneys' fees under section 9.014 of the Family Code. *See* Tex. Fam.Code Ann. § 9.014 (West 1998). As stated previously, the decision to grant or deny attorney's fees under this statute is reviewed for an abuse of discretion. *See Cook*, 733 S.W.2d at 141; *Kurtz*, 859 S.W.2d at 612. Although she successfully defeated the relief appellant requested, Kay failed to prevail on any relief she affirmatively sought. The trial court may have decided that both parties had legitimate interests to pursue and that each side should therefore bear its own attorneys' fees. Given the facts of this case, we believe that the trial court's decision was not arbitrary, unreasonable, or made without reference to any guiding rules and principles. Accordingly, we hold that Kay has failed to demonstrate that the trial court abused its discretion in refusing to award cross-appellant her attorney's fees, and we overrule her remaining issues.

### CONCLUSION

Having overruled all the issues raised by appellant and cross-appellant, we affirm the trial court's judgment.