# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00725-CV

**Lockie Sailor, Appellant**

**v.**

**Daisy V. Phillips, Appellee**

## FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT NO. 121-J, HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING

Lockie Sailor, a divorced mother of two children, appeals the district court's order requiring her to let Daisy V. Phillips ("Phillips"), the children's paternal grandmother, visit the children after the termination of the parental rights of the children's father, Dudley Phillips ("Doug")—Phillips's son and Sailor's ex-husband. Sailor contends that the statute permitting court-ordered visitation by grandparents is unconstitutional, that the order violates her constitutional right to autonomy in child-rearing decisions, and that the ordered visitation is not in the best interest of the children. *See* Tex. Fam. Code Ann. § 153.433 (West Supp. 2001) (governing orders for grandparent visitation). We will affirm the visitation order.

The parties largely agree on the facts underlying the judgment. While married, Sailor and Doug had two sons, one born in July 1985 and another born in May 1987. After Sailor and Doug

divorced in 1989, he failed to pay child support. Sailor married her current husband in 1990. Phillips petitioned for and received temporary grandparent access while Doug resided in a chemical dependency treatment facility; the order expired upon his release in 1992. After Doug failed to pay child support and visited the boys sporadically, his parental rights were terminated in 1996. Phillips testified that she last had face-to-face contact with the boys in November 1996, shortly after the termination, and last spoke with them on the telephone in December 1996. Sailor testified that the last contacts were in 1997. In 1998, Sailor's current husband adopted the boys, who took his last name.

In 2000, Phillips filed her petition for grandparent access to the boys. Sailor stated in her answer that Phillips's request was not in the children's best interest. After a non-jury trial, the court found that contact with Phillips was in the children's best interest. The trial court ordered at least monthly contact on the telephone, one week of possession each summer if Phillips gave written notice to Sailor by May 1 of each year specifying the requested week, and three days at Christmas if Phillips provided thirty days' notice each year of the requested days. The court ordered that Doug not be present when Phillips had possession of the boys.

Sailor contends by her first issue that the visitation order and the statute authorizing it, Family Code section 153.433, violate her due process right to autonomy in child-rearing decisions. Considering a similar argument shortly after Sailor filed her brief, this Court held that neither section 153.433 nor an order requiring grandparent visitation violated the parents' due-process rights under the Fourteenth Amendment. *Lilley v. Lilley*, 43 S.W.3d 703, 710-713 (Tex. App.—Austin 2001, no pet.). We find no reason to alter our decision regarding the facial constitutionality of the statute. We

will examine the constitutionality of the statute as it was applied to Sailor after a review of the testimony.

By her second issue, Sailor contends that the district court abused its discretion by ordering visitation with Phillips. The only element of Family Code section 153.433 in dispute is whether the visitation is in the children's best interest.[1]

A trial court has broad discretion in determining the best interest of a child in visitation decisions. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982); *G.K. v. K.A.*, 936 S.W.2d 70, 72 (Tex. App.—Austin 1996, writ denied); *see Dennis v. Smith*, 962 S.W.2d 67, 68 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). We will reverse a trial court's order only if the trial court abused its discretion—i.e., acted unreasonably, arbitrarily, or without reference to any guiding principles. *G.K.*, 936 S.W.2d at 72. There is no abuse of discretion if the decision is supported by sufficient, competent evidence. *Gillespie*, 644 S.W.2d at 451; *Dennis*, 962 S.W.2d at 68. A trial court does not necessarily abuse its discretion by deciding an issue differently than an appellate court

---

[1] The statute provides as follows:

The court shall order reasonable access to a grandchild by a grandparent if:

(1)   at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated; and

(2)   access is in the best interest of the child, and at least one of the following facts is present:

. . . .

(E)   the grandparent requesting access to the child is the parent of a person whose parent-child relationship with the child has been terminated by court order . . . .

Tex. Fam. Code Ann. § 153.433 (West Supp. 2001).

3

would. *Wright v. Wright*, 867 S.W.2d 807, 816 (Tex. App.—El Paso 1993, writ denied). The trial court, as fact finder, resolves conflicts in the evidence and determines the weight and credibility to give to witness testimony. *Schneider v. Schneider*, 5 S.W.3d 925, 931 (Tex. App.—Austin 1999, no pet.). A fact finder's decision on conflicts in the evidence is generally conclusive. *Id*. These standards apply to orders for grandparent visitation. *Lilley*, 43 S.W.3d at 705-06. In applying these principles to grandparent access, the trial court must accord some special weight to the parent's determination of what access is reasonable. *See Troxel v. Granville*, 530 U.S. 57, 70 (2000) (4-2-3 decision, O'Connor, J. writing for the four-member plurality). However, when the parent denies all grandparent access in circumstances governed by section 153.433, the trial court must determine what access is reasonable. *See Lilley*, 43 S.W.3d at 712-713; *see also Troxel*, 530 U.S. at 71.

Phillips testified that she had a loving relationship with the boys before Sailor severed contact; the boys were ages ten and twelve in November 1997. Phillips said that, shortly after the birth of the younger child, she essentially raised the boys for a month or more while their parents worked in another town. Phillips testified that she thought the boys should know that "the family they were born into still loves them and still wants to see them." She said she would offer them love and knowledge of their father's family. Phillips testified that their father did not live with her and came to see her only when he wanted something—every two months or so; she said Doug used her address as his permanent address because he moved a lot to work in construction. She testified that Doug had no rights to see the boys and had promised not to interfere with her rights. Phillips testified that, when her husband was diagnosed with a terminal illness, she contacted Sailor so that the boys could visit their grandfather before his death. Sailor did not allow the boys to visit him, call him, or attend his funeral in April 2000. Phillips also testified that she had been a licensed day-care provider for

4

twenty-eight years and was, at time of trial, caring for twelve children. She has a 3000-square-foot home that she shares with her teenaged granddaughter. She said she was willing to do whatever the court required to effectuate visitation with her grandsons.

Virginia Lewis, executive director for the Women's Shelter of East Texas and a retired director of volunteer services for the Texas Youth Commission, testified that Phillips is a fine, beloved person. Lewis testified that, when the children were younger and visited Phillips, she demonstrated concern, compassion, and love for them. Lewis testified that she believed visitation was in the children's best interest to perpetuate the bond with Phillips to maintain a sense of belonging and security. Lewis said the children would benefit by being in contact with this good, wholesome, caring, loving person.

Paul Guest testified that Phillips was his day-care provider when he was growing up; he also testified that he was taking his children to her for day care. He said his children had gone to someone else, but that he decided to take them to Phillips because he trusted her. He testified that Phillips's granddaughter was living with her, but Doug was not. He said there was nothing in her home that would be harmful for the grandchildren during their visit.

Sailor testified that visitation with Phillips would not be in the children's best interest. She said she divorced Doug because she did not want her children exposed to Doug's drug abuse and consequent problems. She said that, after the divorce, the children had behavioral problems after visitation with Doug, not because of drug use, but because of different expectations and boundaries; she said the children would return defiant, back-talking, and lying. Sailor testified that there was no improvement when the visitation with Phillips continued during Doug's incarceration because Phillips had been the primary caregiver during the boys' visits with Doug. Sailor said she disagreed with

Phillips about movies the boys watched when they stayed with her. Sailor said that, after the visits, the younger child resisted authority at school, spoke of death in the classroom, was aggressive with other students, and spoke of watching movies with adult themes and violence;[2] she said that the problems stopped when the visits stopped. Sailor said she also did not like that Phillips took the boys to visit Doug in jail or the rehabilitation center (before termination); she did not know whether the visits to rehab continued after she expressed her displeasure because "I wasn't advised and I didn't ask."

Sailor testified that she voluntarily participated in her boys' visitation with Doug's parents until 1997. Sailor testified that she took the boys to see Phillips twice in 1997 in conjunction with visits to Sailor's mother's home. Sailor did not in 1997, as she had done the previous year, take the boys at Thanksgiving to visit Sailor's mother and Phillips. Sailor testified that Phillips called Sailor's mother asking where the boys were and accused Sailor's mother of lying when Sailor's mother denied that the boys were at her house. When Sailor's mother told Sailor of Phillips's accusation, Sailor deemed Phillips's accusation to be harassing and told Phillips not to call her or her mother again. The boys had no contact with Phillips after November 1997. Sailor testified that her boys' behavior and grades stabilized in January 1998; this date corresponds with their move to Robert Lee, the last of four moves in four or five years. She said that, although her younger child's behavioral improvements might be due to maturation, she believes that the improvement is due to the absence of the instability and influences encountered at Phillips's house. She testified that her boys

---

[2] Sailor listed "Nightmare on Elm Street" and "Speed" as movies she did not approve of her boys watching while under Phillips's care; Sailor did not know if Phillips was aware that the boys were watching these movies.

6

treat her husband as their father and are accepted as his children by his extended family. Sailor testified that she believed that Doug would have contact with the boys during their visits with Phillips; she believed that visits with Doug would not be in their best interest because of his persistent problems with drugs and arrests on other offenses. She felt that renewing visits with Phillips would not be in the boys' best interest because it might destabilize their lives.

The boys, ages thirteen and fifteen at time of trial and currently fourteen and sixteen, did not testify at trial.

We find no abuse of discretion in the district court's conclusion that visitation with Phillips is in the best interest of the children. The evidence is that Phillips had a relationship with the boys for their entire lives until November 1997—a period of more than ten and twelve years, respectively. There was evidence that she was a caring, loving grandmother. There was evidence that Phillips was a good person and a trusted child-care provider. Although Sailor feared the boys' father would contact them during the boys' visits, Phillips testified unequivocally that her son would have no contact with the boys. Although Sailor testified that previous visits had disrupted the boys' behavior, there was evidence that the disturbances might have been due to other factors. Although there was evidence that, while visiting Phillips, the boys had watched movies Sailor deemed inappropriate for their age, there was no evidence that Phillips showed the boys the movies, knew in advance that Sailor disapproved of those movies, or even that Phillips knew the boys were watching the movies. We cannot say that the district court abused its discretion by deciding that visitation with Phillips is in the children's best interest.

Nor do we conclude that the district court's decision violated Sailor's constitutional rights. The Supreme Court plurality in *Troxel* recognized and reaffirmed the "fundamental right of

parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66. The Court described this right as a fundamental liberty interest protected from infringement by the states. *See* U.S. Const. amend. XIV; *Troxel*, 530 U.S. at 65. Besides finding the Washington statute facially unconstitutional for its "sweeping breadth," the Court concluded that the application of the statute violated the mother's constitutional rights by ordering visitation by the child's paternal grandparents. *Id*. at 68-72. The Court disapproved of the trial court's apparent presumption that grandparent visitation is always in the children's best interest and its requirement that the mother overcome that presumption; the Court held that the trial court must instead accord "special weight" to the mother's judgment of her children's best interest. *Id*. at 69-70. The Court also noted that the mother agreed that visitation with the grandparents was in the children's best interest, but disagreed with the frequency and duration of visits that the grandparents demanded. *Id*. at 71. "While the [grandparents] requested two weekends per month and two full weeks in the summer, [the mother] asked the Superior Court to order only one day of visitation per month (with no overnight stay) and participation in the [mother's] family's holiday celebrations." *Id*. The Supreme Court held that the trial court's imposition of a visitation order in these circumstances infringed on the mother's right to determine what was in her children's best interest. *Id*. at 72-73. Here, the Family Code defines certain circumstances when grandparent may be ordered if it is in the children's best interest.

Sailor's decision to sever her boys' contact with Phillips critically distinguishes this case from *Troxel*. Rather than offer some visitation as the mother in *Troxel* did, Sailor prohibited all contact between the boys and their grandmother for more than two years before Phillips filed this suit. Sailor blocked a final visit or even telephone contact with the boys' terminally ill grandfather when

8

they were ages twelve and fourteen. This is not a situation in which the boys did not know their grandparents; they visited their grandmother and grandfather for the first ten and twelve years of their lives. Nor is it a situation where there is any indication that the boys were in physical danger at their grandmother's home; the only evidence is that they were safe and cared for. Although Sailor and Phillips apparently have different expectations and boundaries for the boys, there is evidence that Phillips is a trusted child-care provider, that she genuinely cares for the boys, and that the boys can benefit from contact with her. We conclude that the district court did not, by determining that the boys' best interest was served by letting their grandmother speak with them on the telephone monthly and host them for ten days annually, impermissibly strip their mother of her constitutional rights.

We affirm the visitation order.

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed:   November 8, 2001

Do Not Publish

9