# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00520-CV

**William A. Brown, Jr., Appellant**

**v.**

**Ann Lenora Brown and Ann S. Brown, Appellees**

---

**FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT
NO. 2000V-174, HONORABLE DAN R. BECK, JUDGE PRESIDING**

---

Several years after the death of her father, appellee Ann Lenora Brown filed suit seeking to partition family lands she held in co-tenancy with her mother Ann S. Brown and her brother William A. Brown, Jr.[1]  The parties participated in two mediations regarding the disposition of the various tracts of land, signing a settlement agreement after each mediation session.  Under the agreements, Mother received the 126-acre homestead tract, Daughter received two tracts of land totaling about 140 acres, and Son received a 176-acre tract plus $16,000 and his mediation expenses.  After the second mediation agreement was signed but before it was incorporated into a judgment, Son objected to Mother=s reservation of her mineral interest in the tract conveyed to Son and argued that the second agreement was procured by fraud, deceit, or mistake.  The district court found that the two agreements were enforceable as Rule 11

---

[1]  We will refer to appellant William A. Brown, Jr. as ASon,@ to appellee Ann Lenora Brown as ADaughter,@ and to appellee Ann S. Brown as AMother.@

agreements, *see* Texas Rules of Civil Procedure 11,[2] and signed a judgment partitioning the family tracts and ordering the parties to execute the necessary deeds to accomplish the partition detailed in the agreements. Son appeals, contending that he never agreed to Mother=s reservation of her mineral interest in the 176-acre tract he received.

## Factual Background

After Daughter filed her suit seeking the partition of various family lands, the parties mediated their rights to the individual tracts. The parties attended a mediation session in February 2001, which resulted in a signed agreement. **The February agreement, signed by all three parties and their attorneys, provides in pertinent part that:**

> **[Son] shall be awarded and have conveyed to him by Special Warranty Deed the 87 acre tract and the 36 acre tract and [Daughter=s] 50 acre tract by Special**

---

[2] **To be enforced under Rule 11, an agreement between attorneys or parties must be in writing, signed, and filed as part of the record or made in open court and entered of record. Tex. R. Civ. P. 11. The purpose of Rule 11 is to prevent parties from misconstruing or wrongly remembering oral agreements regarding pending suits.** *Padilla v. LaFrance***, 907 S.W.2d 454, 459-60 (Tex. 1995);** *see Ebner v. First State Bank***, 27 S.W.3d 287, 296 (Tex. App. C Austin 2000, pet. denied).**

**Warranty Deed including without limitation [Daughter=s] interest in the minerals and he shall keep the approximate 29 acres from the original 54 acre tract previously deeded to him . . . .[3]**

After the February mediation, three issues arose related to releases, a covenant-not-to-sue, and other properties; the parties returned to mediation on June 11, 2001.  Between the February and June mediations, Daughter=s attorney drafted an agreement and circulated it to Son and Mother**.**  Daughter=s attorney brought to the June mediation the latest version of the agreement, which **differed from earlier circulated drafts in several respects.  In particular, the draft included as an exhibit a summary of all conveyances necessary to accomplish the agreement.  This summary stated that Daughter would convey to Son her interests Ain the surface and minerals@ of the 176-acre tract and Mother would convey her interests Ain the surface,@ whereas a** *previously circulated draft* **of a deed indicated Mother would convey her mineral interests as well as her surface estate.  It appears that no deeds were attached to this latest version of the agreement.**  At the end of the June mediation, the parties and their attorneys signed a new agreement drafted by the attorneys for Daughter and Mother.

The June agreement provides:

---

**[3] Son stated, and no one disputes, that the 176-acre tract is the property referred to in this portion of the February agreement.**  Although the tracts described in the quoted language add up to 173 acres, we will defer to the parties= knowledge of the properties in question and refer to these tracts collectively as the 176-acre tract.

8. <u>Warranties & Representations</u>.  As part of the consideration for the payment of [$16,000 from Daughter to Son], and the covenants and conveyances described in Exhibit A, each of the Parties expressly covenants, agrees, warrants and represents, for themselves and their heirs, executors, legal representatives, successors and assigns, that the Party:

. . . .

   d.  before executing this Agreement, has been fully informed of its terms, contents, conditions and effect, and has had the benefit of the advice of an attorney of the Party=s own choosing;

   e.  before executing this Agreement, has carefully read and understood the contents of the Agreement and has signed it as the Party=s own free act;

   f.  has relied solely and completely on the Party=s own judgment, and the advice of the Party=s counsel, in making and executing this Agreement and has not relied on any representations or promises of any person released hereunder;

. . . .

   j.  fully understands and agrees that no representation by any attorney or other representative acting on behalf of any of the Parties has influenced or induced the execution of this Agreement.

. . . .

12. <u>Terms of Agreement; Headings</u>.  It is understood that the terms of this Agreement are contractual and not mere recital. . . .

. . . .

15. <u>Lack of Coercion or Duress</u>.  The Parties agree that they have each entered into this Agreement freely, without coercion or duress, and after having consulted with professionals of the Party=s own choice.

Each party signed the agreement, and their signatures were notarized.  Each party=s attorney

signed a page stating:

4

I hereby confirm that I have consulted with my client regarding the terms and conditions of the above and foregoing Release and Settlement Agreement. I have ascertained to my own satisfaction that my client fully understands the terms and conditions thereof. . . . My client has executed this Agreement voluntarily and without compulsion and is competent to understand the terms and conditions of the Agreement and the advice that I have given about it.

Exhibit 1 to the June agreement is a summary of the disposition of the various properties. Also attached to the agreement are eleven unexecuted warranty deeds and three maps. Exhibit 1 states that Mother will Aconvey to [Son] the interests of [Mother] in the surface of the 176.57-acre tract@ and Daughter will Aconvey to [Son] the interests of [Daughter] in the surface and minerals of the 176.57-acre tract.@ The deed in question states that Mother conveys to Son her Arights, title, and interest in the surface estate only, and not the minerals,@to the 176-acre tract. In addition to signing the agreement, Son, Daughter, and Mother initialed each page of the agreement and every attachment, including Exhibit 1 and the deed conveying to Son only Mother=s surface estate in the 176-acre tract.

Shortly after the June mediation, Son refused to sign the deeds or an agreed judgment. Mother and Daughter returned to court to enforce the June agreement. The district court held two hearings on the motion to enforce; at those hearings, Son argued that in the June agreement Mother wrongly reserved her mineral interest in the 176-acre tract. He argued that Mother had already disclaimed her surface interest in the tract, making the conveyance to him worthless

5

**without the minerals.**[4]  The district court found that the June and February agreements should be enforced as Rule 11 agreements and rendered a judgment of partition in accordance with the agreements. Additionally, the court found that the February agreement did not require Mother to convey to Son her mineral interests in the 176-acre tract.

## Discussion

Son contends that the June agreement was not enforceable because he never agreed to Mother=s reservation of her mineral interest and because the February agreement was ambiguous as to whether Mother=s mineral interest was to be conveyed.  He further contends that the June agreement was obtained by fraud, misrepresentation, trickery, and/or mistake.  Therefore, argues Son, the district court erred in enforcing the June agreement.  Instead, the district court should have enforced the February agreement or, in the alternative, denied Mother and Daughter=s motion to enforce and either sent the parties back to mediation or set the cause for trial.

**Son correctly asserts that a party may revoke his or her consent any time before the trial court renders judgment, and that a so-called agreed judgment rendered after consent is withdrawn is void.  *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995); *see Padilla v.***

---

[4]  Mother contends that in 1997 she disclaimed her surface interest in most of the tract, but retained a surface interest in twenty-two or twenty-three acres.  Son responded that the retention of surface interest in those twenty-odd acres was a typographical error.  Mother replied, AThat=s the state of the record and the property records, Judge, and so that=s what they=re stuck with.@

**6**

*LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995); *Alcantar v. Oklahoma Nat=l Bank*, 47 S.W.3d 815, 819 (Tex. App.C Fort Worth 2001, no pet.). However, a settlement agreement that meets the requirements of Rule 11 may be enforced as a binding contract under general contract law rather than as an agreed judgment. *See* Tex. R. Civ. P. 11; *Padilla*, 907 S.W.2d at 461; *Alcantar*, 47 S.W.3d at 819.

In construing a contract, a court=s primary concern is discerning the true intentions of the parties as expressed by the contract. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Sidelnik v. American States Ins. Co.*, 914 S.W.2d 689, 691 (Tex. App.C Austin 1996, writ denied). To determine the parties= intentions, courts consider the entire writing, seeking to harmonize and give effect to all contractual provisions, if possible. *Hofland v. Fireman=s Fund Ins. Co.*, 907 S.W.2d 597, 599 (Tex. App.C Corpus Christi 1995, no writ). The language used by the parties is to be given its plain, grammatical meaning unless it appears that to do so would defeat the parties= intentions. *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex. 1985); *see also Snyder v. Eanes Indep. Sch. Dist.*, 860 S.W.2d 692, 696 (Tex. App.C Austin 1993, writ denied) (meaning given to contractual language is question of law and should be interpreted to carry out parties= intentions).

Separate instruments may be read together as one contract if they pertain to the same transaction, even if they do not expressly refer to each other. *Board of Ins. Comm=rs v. Great S. Life Ins. Co.*, 239 S.W.2d 803, 809 (Tex. 1951); *Cothron Aviation, Inc. v. Avco Corp.*, 843 S.W.2d 260, 263 (Tex. App.C Fort Worth 1992, writ denied); *Massey v. Galvan*, 822 S.W.2d

309, 315 (Tex. App.─Houston [14th Dist.] 1992, writ denied).  The separate instruments need not have been executed contemporaneously, but they must not conflict with respect to issues such as terms and parties.  *Cothron Aviation, Inc.*, 843 S.W.2d at 263.

Whether a contract is ambiguous is a question of law for the trial court to decide by viewing the contract as a whole in light of the circumstances under which the contract was entered.  *Coker*, 650 S.W.2d at 394; *Sidelnik*, 914 S.W.2d at 691.  If the contract can be given a definite or certain meaning, then it is not ambiguous and will be interpreted as a matter of law.  *Coker*, 650 S.W.2d at 393; *Sidelnik*, 914 S.W.2d at 691.  That the parties draw differing interpretations or that the contract uses unclear or uncertain language does not necessarily render a contract ambiguous.  *See Weslaco Fed=n of Teachers v. Texas Educ. Agency*, 27 S.W.3d 258, 264 (Tex. App.─Austin 2000, no pet.); *Hofland*, 907 S.W.2d at 599.  Courts should not strain to find ambiguities if by so doing they defeat the parties= probable intentions.  *Quality Oilfield Prods., Inc. v. Michigan Mut. Ins. Co.*, 971 S.W.2d 635, 637 (Tex. App.─Houston [14th Dist.] 1998, no pet.).

As fact finder, a trial court is the sole judge of credibility and weight to be given to testimony.  *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 567 (Tex. 2000); *Webb v. Jorns*, 488 S.W.2d 407, 411 (Tex. 1972) (AIt is an old and familiar rule that the fact finder may resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses.@); *Schneider v. Schneider*, 5 S.W.3d 925, 931 (Tex. App.─Austin 1999, no pet.).  We will not second-guess a trial court=s resolution of conflicts in the evidence, and

8

the fact finder=s decision on evidentiary conflicts generally is regarded as conclusive. *Schneider*, 5 S.W.3d at 931; *see also Griffin Indus., Inc. v. Honorable Thirteenth Court of Appeals*, 934 S.W.2d 349, 355 (Tex. 1996) (Baker, J., dissenting). Although we review a trial court=s conclusions of law *de novo*, we will uphold conclusions of law unless they are erroneous as a matter of law. *See Westech Eng=g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.CAustin 1992, no writ). We will affirm a trial court=s judgment if it can be supported by any valid legal theory. *Id*.

At the hearings, Son stated and Daughter agreed that the first draft of a deed, drawn up after the February mediation to give Mother=s interest in the 176-acre tract to Son, conveyed both Mother=s surface and mineral estates in the tract; Mother insisted that she never agreed to that conveyance. Daughter=s attorney said that at the June mediation, Mother=s attorney Ahad documents he wanted to use, and those did not include a conveyance of the minerals.@ Son stated that he never agreed to Mother=s reservation of her mineral estate in the 176-acre tract. Daughter=s attorney testified that she circulated draft deeds before the June mediation but never received any comments from Son or Mother and so sheAjust showed up at mediation with drafts of all of the deeds according to what I had sent out, but nobody had agreed to anything at that point.@ However, Son=s attorney stated Son had agreed to the draft deeds. A letter from Daughter=s attorney to Son=s attorney states, A[W]e certainly welcome [Son] to either draft the deeds or to provide comments and suggestions regarding the manner in which they should be handled.@

**Son, who is himself an attorney, was represented by counsel throughout these proceedings; he testified that he signed the June agreement because "[a]ll of the exhibits and attachments were represented to me to be unchanged and I thought they were unchanged. I later found they were changed." Son testified that at the June mediation he requested certain changes to the draft agreement, such as the removal of a covenant-not-to-sue.[5] Son denied that he reviewed the documents given to him after Mother's and Daughter's attorneys made changes, saying, "These documents were presented after the mediator left[,] while the notary public was standing over me and everybody else had already signed and initialed and they were waiting to leave."**

Daughter's attorney, who testified that the mineral interest for the 176-acre tract was never mentioned as an issue to be addressed at the June mediation, testified that she brought to the June mediation a draft deed in which Mother conveyed her surface and mineral interests to Son. However, the deed that was eventually attached to the June agreement came from a computer disk provided by Mother's attorney.

---

**[5] Son's attorney objected to some of Mother's questioning of Son, saying, "[D]iscussions that took place in the mediation are protected and are not admissible for any purpose. So what the Court has before it here are two settlement agreements and some testimony that he didn't agree to one of the exhibits." The district court sustained the objection and said the attorneys should not "get into anything discussed at settlement – mediation." Mother stated, "[M]y ultimate point is that [Son] negotiated a change to Exhibit 1 [of the June agreement], which demonstrates that he reviewed Exhibit 1."**

Daughter=s attorney said that at the June mediation the mediator asked the attorneys to use lists and deeds provided by Mother=s attorney because those lists were more accurate. She and Mother=s attorney went to her office to prepare the final deeds using Mother=s attorney=s computer disk. Daughter=s attorney believed that at the time she and Mother=s attorney left to make final revisions, Son and Son=s attorney had copies of the new deed reserving Mother=s mineral estate in Son=s tract. Son and his attorney had at least an hour to review the documents, which Daughter=s attorney believed was Aadequate time for that review.@ When they returned from making changes, the mediator had left; Daughter=s attorney reviewed the documents with Daughter, asking her to sign the agreement and to initial each page of the agreement and of the attached exhibits and deeds, which took about half an hour. The documents were then given to Mother for her review and signature, and then to Son. **Asked about a draft agreement introduced into evidence, Daughter=s attorney stated:**

> **This is the copy that was given to the mediator when we walked in the room that day. As I recall, what occurred that day is, I walked in with the version of the settlement agreement that I had circulated; versions of the special warranty deeds that I had completed B those had not all been circulated because I just got the land description the Friday before for some of that. And when we went in, this was the settlement agreement that you [Mother=s attorney] presented, saying that you had done the same thing I had done in putting things together. So that was talked about at the mediation.[6]**

---

[6] Son contends that Daughter=s attorney=s testimony establishes that only the mediator was provided with a draft indicating that Mother was reserving her mineral interest. However, a careful reading of the [record that the] testimony is not so clear. Daughter=s attorney said she gave a copy of the draft to

The referenced draft states that Mother conveyed to Son her surface interest and Daughter conveyed her surface and mineral interests. Daughter=s attorney did not know whether Son read the deeds but said, AI know that the mediator came out and said that there had been a request from that side to please change the special warranty deeds to reflect the address for [Son] at his post office box.@ Daughter=s attorney testified that when she and Mother=s attorney went to her office to make changes that Ahad been requested to be made both to the warranty deeds and to the main document of the settlement agreement, we got a phone call from the mediator saying that changes had been requested to Paragraph 10 of Exhibit 1 to that settlement agreement, specifically requesting that we delete some language that appeared to be redundant.@ Mother=s attorney stated that Athis mineral issue was discussed at the second mediation,@ but Son stated that such a statement was Aa boldfaced lie@ and that Mother=s mineral interest in the 176-acre tract was not discussed in the June mediation.

The district court had before it conflicting testimony regarding the June agreement. Son contended that he was tricked into signing an agreement that contained changes of which he was unaware, but Daughter=s attorney testified that Son had a draft stating that Mother would convey only her surface interest, as opposed to Daughter=s conveyance to Son of her surface and mineral interest in the 176-acre tract. There is evidence in the record to indicate that Mother retained a surface interest in a small

the mediator when she walked into the room. She does not indicate that the parties were not given the same draft or that they were given a different draft.

part of the tract, contrary to Son=s assertion that she retained only the mineral estate. Son was given the opportunity to draft the deeds himself and did not do so. He signed and initialed each page of the June agreement, including Exhibit 1 (the Summary of Conveyances) and Exhibit 8 (the deed for the 176-acre tract), both of which prominently mentioned that Mother conveyed only her surface estate in the tract.

As we have detailed, the June agreement in several prominent places stated that each party read and understood the entire document and entered into the agreement free of coercion and duress. Son=s attorney specifically affirmed that his client understood the terms of the agreement and signed it voluntarily. The deed in dispute is four pages long, and the last two pages are simply signature pages. The first full paragraph on the first page states, A[Mother] . . . does GRANT, TRANSFER, and CONVEY, unto [Son] all of [Mother=s] rights, title, and interest in the surface estate only, and not the minerals . . . .@ The February agreement on which Son heavily relies is silent as to Mother=s mineral interest in the tract, while specifying that Son will receive Daughter=s mineral interest. That an early draft of a deed, to which Mother did not agree, stated Mother would convey to Son her mineral interest does not conclusively establish that Son was tricked into signing a changed agreement in June. The district court was in a position to evaluate the testimony and resolve all conflicts in the evidence. *See Schneider*, **5 S.W.3d at 931.** We will not second-guess that determination. *See id.*

The trial court could have considered the repeated language in the June agreement that each party read and understood its terms and did not rely on any representations by another party or another party=s representative as an inducement to enter the agreement. The court could have considered that each party initialed every page of the agreement and the complained-of deed. The court could have considered

**13**

that the February agreement did not specifically require Mother to convey to Son her mineral estate in the 176-acre tract and so did not contradict the June agreement that specifically reserved her mineral estate in that tract. The court could have considered that Son, as an attorney who was represented by his own counsel, would have or should have read the agreement and the disputed deed before signing the agreement. We hold that the two agreements satisfy the requirements of Rule 11 and hence the district court did not err in finding the agreements enforceable or in signing a judgment of partition in accordance with the signed agreements. We overrule Son=s issues on appeal and affirm the judgment of the district court.

_____

Bea Ann Smith, Justice

Before Chief Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed:   June 21, 2002

Do Not Publish

14