Opinion issued February 16, 2007



















In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00494-CV






YAHYA HASSAN, INDIVIDUALLY AND D/B/A SAFE CAB CO. A/K/A
SAFE CAB COMPANY, AND KEMAL MOHAMMED, INDIVIDUALLY
AND D/B/A SAFE CAB CO. A/K/A SAFE CAB COMPANY, Appellants


V.


GREATER HOUSTON TRANSPORTATION COMPANY D/B/A YELLOW
CAB, Appellee






On Appeal from the 281st District Court

Harris County, Texas

Trial Court Cause No. 2004-21000






DISSENTING OPINION

 I withdraw my previous dissenting opinion dated February 15, 2007 and issue
the following dissenting opinion in its stead. I respectfully dissent. This is an
important trade dress infringement case of first impression. It was brought by
appellee, Greater Houston Transportation Company d/b/a Yellow Cab ("Yellow
Cab") against appellants, Yahya Hassan, individually and d/b/a Safe Cab Co. a/k/a
Safe Cab Company, and Kemal Mohammed, individually and d/b/a Safe Cab Co.
a/k/a Safe Cab Company ("Safe Cab"), under 15 U.S.C. § 1125(a) (2000), commonly
known as the Lanham Act (the "Act"), and Texas common law. Appellant assigns
points of error under both. The majority incorrectly concludes that appellant failed
to preserve its challenge to the legal sufficiency of the evidence, proceeds directly to
analyze the jury charge, summarily rejects a legally correct jury charge as erroneous
without analyzing trade dress law, conducts a cursory and impressionistic harm
analysis, concludes that the error was harmful, and remands the case for a new trial
under an incorrect charge. The opinion invites the waste of judicial resources,
confusion in the jury, and error in the next judgment and in future cases. It also
creates a conflict between interpretations of the Lanham Act by Texas state courts and
federal courts with concurrent jurisdiction over the same federal claims. I would
affirm.

Jury Charge Error: Standard of Review

 In its third point of error, Safe Cab asserts that the trial court erred in
submitting an erroneous definition of "secondary meaning" in the jury charge. 
Referring only to a portion of the language from the challenged jury instruction and
a single sentence in the language of a seminal Supreme Court case, and without citing
or applying the standard of review for reversible jury charge error, the majority
conclusorily holds that an incorrect charge requiring reversal was submitted. Because
I believe the challenged jury instruction was not erroneous under the applicable
standard of review and that, even if it had been erroneous, the error would not have
caused the rendition of an improper judgment because the evidence of trade dress
infringement was legally and factually sufficient to support the judgment, I would
affirm.

 "Rule 277 of the Texas Rules of Civil Procedure requires a trial court to submit
'such instructions and definitions as shall be proper to enable the jury to render a
verdict.'" State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 451 (Tex. 1997) (quoting
Tex. R. Civ. P. 277)). An appellate court reviews a trial court's decision to submit
or refuse an instruction under an abuse of discretion standard. Shupe v. Lingafelter,
192 S.W.3d 577, 579 (Tex. 2006). When the trial court refuses to submit a requested
instruction on an issue raised by the pleadings and the evidence, the issue on appeal
is whether the request was reasonably necessary to enable the jury to reach a proper
verdict. Id.; Texas Workers' Comp. Ins. Fund v. Mandlbauer, 34 S.W.3d 909, 912
(Tex. 2000). To be proper, an instruction "must (1) assist the jury; (2) accurately state
the law; and (3) find support in the pleadings and the evidence." Mandlbauer, 34
S.W.3d at 912. 

 The trial court has wide discretion to determine the sufficiency of definitions
and instructions. Plainsman Trading Co. v. Crews, 898 S.W.2d 786, 791 (Tex.
1995); Allen v. Allen, 966 S.W.2d 658, 659 (Tex. App.--San Antonio 1998, pet.
denied). The test of the sufficiency of a definition is its reasonable clarity in enabling
jurors to understand legal words or phrases so that they may properly answer the
questions and render a verdict in the case. Allen, 966 S.W.2d at 660; Harris v.
Harris, 765 S.W.2d 798, 801 (Tex. App.--Houston [14th Dist.] 1989, writ denied). 
An instruction is improper only if it misstates the law as applied to the facts. Harris,
765 S.W.2d at 801. 

 If the reviewing court determines that the trial court gave an improper
definition, it must then proceed to inquire whether the error was harmless. Allen, 966
S.W.2d at 660; M.N. Dannenbaum, Inc. v. Brummerhop, 840 S.W.2d 624, 631 (Tex.
App.--Houston [14th Dist.] 1992, writ denied); see also Tex. R. App. P. 44.1(a)(1). 
The omission of an instruction is reversible error only if it probably caused the
rendition of an improper judgment. Shupe, 192 S.W.3d at 579.

The Challenged Jury Instruction

 Jury Question No. 1 asked, "Does YELLOW CAB's predominant use of the
color yellow constitute a valid trade dress in the City of Houston?" 

 The instruction to which appellants object stated:

 Definition "Secondary meaning": You are instructed that for purposes
of this question, "secondary meaning" means that the color at issue has
acquired a meaning beyond the primary meaning, by having become
associated by use, promotion or advertising, in the public mind with the
business of YELLOW CAB. 


 You may consider the following factors when you determine whether
YELLOW CAB's predominant use of the color yellow has acquired a
secondary meaning: 


 (1) length and manner of use of the trade dress; 

 (2) volume of sales; 

 (3) amount and manner of advertising 

 (4) nature of the use of the trade dress

 (5) SAFE CAB['s] intent in copying the trade dress.


 No one of these factors is necessarily conclusive, but the consideration
of each should be weighed in light of the total evidence presented at trial. You
are instructed that YELLOW CAB need not produce evidence on all or even
a majority of these factors. You're are further instructed that no one factor is
dispositive.


(Emphasis added.)

 Safe Cab informed the trial court at the charge conference that it believed a
proper statement of the law required the court to instruct the jury that "secondary
meaning . . . requires in the minds of the consuming public the color has become
uniquely linked with only one provider of the service to the exclusion of all other
providers of the service as causes confusion to its origin." (Emphasis added.) The
trial court stated that it "notes your objection to the lack of inclusion of the
terminology regarding color. Court overrules said objection."

Propriety of the Instruction Under the Lanham Act

 To determine whether the instruction on secondary meaning submitted to the
jury was proper, we must determine whether it accurately stated the law and thus
assisted the jury in making a finding supported by the pleadings and the evidence. 
See Mandlbauer, 34 S.W.3d at 912. To make this determination, it is necessary to
determine what constitutes proof of trade dress infringement under the Lanham Act. 

 The Lanham Act provides in relevant part:

 (1) Any person who, on or in connection with any goods or services,
or any container for goods, uses in commerce any word, term,
name, symbol, or device, or any combination thereof, or any false
designation of origin, false or misleading description of fact, or
false or misleading representation of fact, which--


 (A) is likely to cause confusion, or to cause mistake, or to
deceive as to the affiliation, connection, or association of
such person with another person . . . 


***

 shall be liable in a civil action by any person who believes that he or she is or
is likely to be damaged by such act.


***

 (3) In a civil action for trade dress infringement under this Act for trade
dress not registered on the principal register, the person who asserts
trade dress protection has the burden of proving that the matter sought
to be protected is not functional.


15 U.S.C. § 1125(a) (2000) (emphasis added). The Act establishes a cause of action
for trade dress infringement. 15 U.S.C. § 1125(a)(3) (2000 & Supp. I 2006)
(specifically referring to "civil action[s] for trade dress infringement under this
chapter for trade dress not registered on the principal register"); Wal-Mart Stores, Inc.
v. Samara Bros., Inc., 529 U.S. 205, 209, 120 S. Ct. 1339, 1343 (2000); Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH, 289 F.3d 351, 354 (5th Cir. 2002). Trade
dress, for which the Lanham Act provides protection, refers to the design or
packaging of a product that serves to identify the product's source. TrafFix Devices,
Inc. v. Marketing Displays, Inc., 532 U.S. 23, 28, 121 S. Ct. 1255, 1259 (2001);
Samara Bros., 529 U.S. at 209, 120 S. Ct. at 1342; Eppendorf-Netheler-Hinz, 289
F.3d at 355. The purpose of trade dress protection under the Lanham Act is "to
'secure to the owner of the [trade dress] the goodwill of his business and to protect
the ability of consumers to distinguish among competing [producers].'" Eppendorf-Netheler-Hinz, 289 F.3d at 355 (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505
U.S. 763, 774, 112 S. Ct. 2753, 2760 (1992)). 

 The Supreme Court and the federal courts have identified three essential
elements of a Lanham Act claim. 

 First, to prevent trademark law from inhibiting legitimate competition by
allowing a producer to control a useful product feature, "the person who asserts trade
dress protection [under the Lanham Act] has the burden of proving that the matter
sought to be protected is not functional." Eppendorf-Netheler-Hinz, 289 F.3d at 355
(quoting 15 U.S.C. § 1125(a)(3)); see also Two Pesos, 505 U.S. at 769, 112 S. Ct. at
2758.

 Second, in order to be entitled to protection, a trademark, including trade dress,
must be distinctive. Two Pesos, 505 U.S. at 768, 112 S. Ct. at 2757. Trademarks are
generally classified as (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5)
fanciful. Id. Generic trademarks are not entitled to protection; trademarks that are
suggestive, arbitrary, or fanciful are intrinsically distinctive. See id. Descriptive
marks are not inherently distinctive, but they may acquire the distinctiveness that
allows them to be protected by the Lanham Act by acquiring "secondary meaning." 
Two Pesos, 505 U.S. at 769, 112 S. Ct. at 2757; Zatarains, Inc. v. Oak Grove
Smokehouse, Inc., 698 F.2d 786, 793-94 (5th Cir. 1983). "Secondary meaning is
used generally to indicate that a mark or dress 'has come through use to be uniquely
associated with a specific source.'" Two Pesos, 505 U.S. at 766 n. 4, 112 S. Ct. at
2756 n.4. Thus, "[t]o establish secondary meaning, a manufacturer must show that,
in the minds of the public, the primary significance of a product feature or term is to
identify the source of the product rather than the product itself." Id. (quoting Inwood
Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.11, 102 S. Ct. 2182, 2187 n.11
(1982)).

 Third, liability for trade dress infringement requires proof of the likelihood of
confusion between the product of the plaintiff and that of the defendant. Two Pesos,
505 US. at 769, 112 S. Ct. at 2758; Sunbeam Prods., Inc. v. West Bend Co., 123 F.3d
246, 257 (5th Cir. 1997); Blue Bell Bio-Med. v. Cin-Bad, Inc., 864 F.2d 1253, 1256
(5th Cir. 1989). 

 Thus, to prove that Safe Cab infringed its protected trade dress, Yellow Cab
had to prove that (1) the color yellow on its cabs is a non-functional trade dress (a
matter which is undisputed); (2) the color yellow has acquired a secondary meaning
for Houston cabs, i.e., it has become primarily associated in the minds of the public
as signifying the brand "Yellow Cab" rather than a cab that is yellow; and (3) there
is a likelihood of confusion by consumers between Safe Cab and Yellow Cab. 

 "To establish secondary meaning, a manufacturer must show that, in the minds
of the public, the primary significance of a product feature or term is to identify the
source of the product rather than the product itself." Two Pesos, 505 U.S. at 766 n.4,
112 S. Ct. at 2756 n.4; see also Samara Bros., 529 U.S. at 211, 120 S. Ct. at 1343. 
While no color can ever be inherently distinctive, a color may be protected as a
trademark upon a showing of secondary meaning. Samara Bros., 529 U.S. at 211-12,
120 S. Ct. at 1343-44. This occurs when, "over time, customers . . . come to treat a
particular color on a product or its packaging . . . as signifying a brand." Id. at 212,
120 S. Ct. at 1344. The existence of secondary meaning is a question for the trier of
fact, and a district court's finding on this issue will not be disturbed unless clearly
erroneous. Sunbeam Prods., 123 F.3d at 253; Zatarains, 698 F.2d at 794. "[T]he
major inquiry is the consumer's attitude towards the mark." Zatarains, 698 F.2d at
795. 

 Evidence relevant to the determination of secondary meaning includes (1) the
length and manner of the use of the mark, (2) the nature and extent of advertising and
promotion of the mark, (3) the volume of sales of the product, and (4) instances of
actual confusion. Sunbeam Prods., 123 F.3d at 254; Zatarains, 698 F.2d at 795. 
While none of these factors is sufficient by itself to establish the necessary link in the
minds of consumers between a product and its source, they may in combination do
so. Zatarains, 698 F.2d at 795. The ultimate inquiry, however, is not the extent of
the promotional efforts, but their effectiveness. Id.; see also Bank of Texas v.
Commerce Sw., Inc., 741 F.2d 785, 788 (5th Cir. 1984). Accordingly, the most direct
and persuasive way of establishing secondary meaning is through survey evidence. 
Sunbeam Prods., 123 F.3d at 253-54; Zatarains, 698 F.2d at 795.

 Here, the instruction submitted to the jury stated that "'secondary meaning'
means that the color at issue has acquired a meaning beyond the primary meaning,
by having become associated by use, promotion or advertising, in the public mind
with the business of YELLOW CAB." (Emphasis added.) Cf. Two Pesos, 505 U.S. at
766 n.4, 112 S. Ct. at 2756 n.4 (holding that "[t]o establish secondary meaning, a
manufacturer must show that, in the minds of the public, the primary significance of
a product feature or term is to identify the source of the product rather than the
product itself.") (emphasis added) (quoting Inwood Labs., 456 U.S. at 851 n.11, 102
S. Ct. at 2187 n.11). The instruction does not state that the primary significance of
the color yellow when used on a cab must shift from the color itself to the business. 
However, any suggestion of a deficiency in the definition was cured by the
instruction's accurate recital of the factors for the jury to consider in proving
secondary meaning. The instruction went on to state:

 You may consider the following factors when you determine whether
YELLOW CAB's predominant use of the color yellow has acquired a
secondary meaning: 


 (1) length and manner of use of the trade dress; 

 (2) volume of sales; 

 (3) amount and manner of advertising 

 (4) nature of the use of the trade dress

 (5) SAFE CAB['s] intent in copying the trade dress.


 No one of these factors is necessarily conclusive, but the consideration
of each should be weighed in light of the total evidence presented at trial. You
are instructed that YELLOW CAB need not produce evidence on all or even
a majority of these factors. You're are further instructed that no one factor is
dispositive.


The instruction thus includes an accurate summary of the factors the federal courts
have held are to be considered in determining whether a product has acquired a
secondary meaning for Lanham Act purposes. See Sunbeam Prods., 123 F.3d at 254;
Zatarains, 698 F.2d at 795 (evidence relevant to determination of secondary meaning
includes (1) length and manner of the use of the mark, (2) nature and extent of
advertising and promotion of mark, (3) volume of sales, and (4) instances of actual
confusion). Moreover, the instruction accurately and helpfully informed the jury that
"[n]o one of these factors is necessarily conclusive, but the consideration of each
should be weighed in light of the total evidence presented at trial."

 By contrast, the instruction Safe Cab sought would have incorrectly informed
the jury that "for color to acquire secondary meaning requires in the minds of the
consuming public the color has become uniquely linked with only one provider of the
service to the exclusion of all other providers of the service." (Emphasis added.) This
implies a higher burden of proof than any of the legal authority interpreting the
Lanham Act requires. In addition, the proffered instruction--by itself--would have
entirely failed to advise the jurors either that they were to consider specific factors in
determining whether the color yellow had acquired a secondary meaning or that they
were to weigh all factors in light of the total evidence rather than considering any one
of them dispositive. Thus, the rejected instruction would have left the jury with the
incorrect impression that all they had to consider was proof that the color yellow was
"uniquely linked" with Yellow Cab "to the exclusion of all other providers," which
is not the standard of proof of a Lanham Act claim.

 The instruction on secondary meaning submitted to the jury accurately stated
the law, assisted the jury, and comported with the pleadings and proof of a Lanham
Act claim. It was, therefore, well within the judge's broad discretion to submit. See
Mandlbauer, 34 S.W.3d at 912; Plainsman Trading Co., 898 S.W.2d at 791; Allen,
966 S.W.2d at 660. By contrast, the instruction proffered by appellant in its place
was unhelpful and misleading. Therefore, I would overrule Safe Cab's third point
of error. The majority, however, recites only a few words of the submitted instruction
without acknowledging the rest, ignores the federal courts' determination of factors
to consider in determining whether a product has established a secondary meaning,
determines conclusorily that the instruction is erroneous, and sustains the point of
error. It then conducts a cursory harm analysis and orders a new trial under an
improper instruction, thereby inviting confusion in the jury, error by the trial court,
and the waste of litigation resources.

Harm Analysis: Sufficiency of the Evidence to Support the Judgment

 When an appellate court finds error in the submission of a jury instruction, a
harm analysis is mandatory. Allen, 966 S.W.2d at 660; M.N. Dannenbaum, 840
S.W.2d at 631. Thus, if I were to agree with the majority's conclusion that the
instruction submitted on secondary meaning was erroneous, I would determine
whether the error was harmful by asking whether it probably caused the rendition of
an improper judgment. See Shupe, 192 S.W.3d at 579. Because I would find that the
evidence was both legally and factually sufficient to support the judgment under the
proper factors, I do not agree with the majority's implied conclusion that its
submission probably caused the rendition of an improper judgment and, therefore,
reversal and remand was required. See id. at 579. I would affirm the judgment
below. (1)

 Evidentiary Issues

 To prove trade dress infringement under the Lanham Act, Yellow Cab had to
prove (1) that the color yellow is non-functional, which is not disputed; (2) that the
color yellow had acquired a secondary meaning in the Houston marketplace; and (3)
that there was a likelihood of confusion in the mind of the public between Safe Cab
and Yellow Cab. See Two Pesos, 505 U.S. at 768-69, 112 S. Ct. at 2757-58. In its
fourth, fifth, and sixth points of error, Safe Cab argues that the evidence was legally
and factually insufficient to support the jury's implicit finding of "secondary
meaning" and that the evidence was factually insufficient to support the jury's finding
that Safe Cab's use of the color yellow on its taxis caused a likelihood of confusion
in the minds of the public. Therefore, I would address these points of error to
determine whether the judgment was improper.

 Standard of Review of Legal and Factual Sufficiency of the Evidence

 When an appellant attacks the legal sufficiency of an adverse finding on an
issue on which it did not have the burden of proof, it must demonstrate that no
evidence supports the finding. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex.
1983). In deciding whether the evidence in support of the finding amounts to "no
evidence," the reviewing court considers only the evidence and inferences tending to
support the jury's finding, viewed in the light most favorable to the finding, and
disregards all contrary evidence and inferences. MerrellDow Pharm., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997); Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456,
458 (Tex. 1992); see City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005)
(holding that whether reviewing court starts with all or only part of record, it "must
consider evidence in the light most favorable to the verdict, and indulge every
reasonable inference that would support it," but "if the evidence allows of only one
inference, neither jurors nor the reviewing court may disregard it"). Thus, "[a] no-evidence point will be sustained when (a) there is a complete absence of evidence of
a vital fact, (b) the court is barred by rules of law or of evidence from giving weight
to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a
vital fact is no more than a scintilla, or (d) the evidence conclusively establishes the
opposite of the vital fact." City of Keller, 168 S.W.3d at 810 & n.16 (quoting Havner,
953 S.W.2d at 711). "More than a scintilla" of evidence exists to support a jury
finding when the evidence supporting the finding, taken as a whole, would enable
reasonable and fair-minded people to draw different conclusions. Havner, 953
S.W.2d at 711.

 In reviewing the factual sufficiency of the evidence to support a jury finding,
the court conducts a neutral review of all the evidence and sets aside the verdict only
"if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust." Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); see also Minucci v.
Sogevalor, S.A., 14 S.W.3d 790, 794 (Tex. App.--Houston [1st Dist.] 2000, no pet.).

 Legal Sufficiency of Evidence of Secondary Meaning

 Here, I would hold that the evidence taken as a whole and considered under the
Zatarains factors in the light most favorable to the verdict is legally sufficient to
support the jury's implicit finding that Yellow Cab established a secondary meaning
for the color yellow. See Zatarains, 698 F.2d at 795.

 (1) Length and manner of use of the mark

 Yellow Cab produced evidence that it had operated only predominantly yellow
taxicabs in the Houston area since the 1940's, was the senior user of yellow colored
taxis in Houston, and promoted the color yellow as its trade dress. It also produced
evidence that it had worked assiduously to associate its trade dress with superior
training of its personnel and superior service.

 (2) Nature and extent of advertising and promotion of the mark

 Yellow Cab also produced evidence that it used its taxicabs as rolling
advertisements for Yellow Cab and that it engaged in extensive marketing efforts in
the media. In the year prior to trial it had spent several hundred thousand dollars
marketing and advertising. It also purchased a dominant advertisement displaying its
cab and the color yellow in the Yellow Pages. In addition, it belonged to trade and
business associations, sponsored charitable events, and used a vintage cab and a
Hummer painted with Yellow Cab's predominantly yellow color in parades and
promotions. 

 (3) Volume of sales

 Yellow Cab also produced evidence that it had grown its operations from 67
cabs in 1967 to 894 cabs at the time of trial and that 700 to 800 of its yellow taxis
operated daily on Houston streets, each with identical yellow coloring. In 2003, the
year prior to trial, Yellow Cab taxis amounted to 40% of the entire taxicab fleet in
Houston. That year, 1.6 million Yellow Cab trips were dispatched in Houston. 
Yellow Cab had contracted with three agencies serving the disabled and dispatched
650,000 calls to them in the 12 months preceding trial. In addition, Yellow Cab had
solicited and obtained contracts with 600 companies to use voucher accounts,
resulting in 645,000 calls. Each of Yellow Cab's taxis logs 60,000 to 65,000 miles
a year servicing the Houston area.

 (4) Instances of actual confusion

 While there was no direct survey evidence of the effect of Yellow Cab's yellow
trade dress on consumers, there was indirect evidence of consumer confusion. The
City of Houston official with responsibility for taxi operations, Blanton Daniels,
testified that customers associated yellow cabs with Yellow Cab and that, if that same
cab color scheme were to come before him again for approval it would not be
approved because of the potential for confusion in the public. Because of the
likelihood of confusion to the consuming public he had "gone to the length of putting
a moratorium on the color yellow." Daniels further testified, "I think a person
walking out to get a cab might be fooled. It could happen." Finally, he testified that,
stepping out of his own role, "I can see where a person would look at a yellow car and
if it's a cab, they were automatically going to assume it's Yellow Cab."

 Although none of the factors cited above is sufficient by itself to establish the
necessary link in the minds of consumers between a product and its source, viewing
the foregoing evidence in the light most favorable to Yellow Cab, I would hold that
the evidence of secondary meaning, taken as a whole, is legally sufficient to support
the jury's implied finding with respect to Jury Question No. 1 that Yellow Cab
established a secondary meaning for the use of the color yellow as its trade dress. 

 Factual Sufficiency of Evidence of Secondary Meaning

 Safe Cab also contends, however, that, viewed neutrally, the evidence was
factually insufficient to support the jury's finding that Yellow Cab established a
secondary meaning for its predominantly yellow trade dress, i.e., "it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust." Cain,
709 S.W.2d at 176. 

 Safe Cab reminds us that the absence of an objective consumer survey is a
significant hindrance to satisfying the high standard of proof of secondary meaning. 
See Vision Ctr. v. Optiks, Inc., 596 F.2d 111, 119 (5th Cir. 1979). It points to
evidence that Yellow Cab did not conduct any consumer interviews or perform any
consumer surveys to determine the effectiveness. Nor was there any direct evidence
that consumers were confused between Yellow Cab and Safe Cab. Moreover, it
points out that many other cab companies in the Houston area had used the color
yellow. 

 Yellow Cab responds that it did produce some evidence of actual customer
confusion through Daniels, the person in charge of taxi operations for the City of
Houston. It also responds that there was evidence that the use of predominantly
yellow cabs by other taxi operators was a recent phenomenon, that the City of
Houston did not monitor the use of color by its licensees after the license was issued,
and that the City of Houston had placed a moratorium on issuing further licenses for
the operation of yellow cabs. 

 I cannot say that the evidence was so weak or the jury's implied finding on
secondary meaning in support of its answer to Jury Question No. 1 was so against the
great weight and preponderance of the evidence as to be manifestly wrong and unjust. 
See Cain, 709 S.W.2d at 176. I would hold, therefore, that the evidence was factually
sufficient to support the jury's implied finding in response to Question No. 1 that
Yellow Cab had established a secondary meaning for the use of the color yellow. 

 I would overrule Safe Cab's fourth and fifth points of error.

 Factual Sufficiency of Evidence of Likelihood of Confusion

 In response to Question No. 3, the jury responded that Safe Cab's use of the
color yellow on its taxi caused a likelihood of confusion. In its sixth issue, Safe Cab
contends that the evidence was factually insufficient to support the jury's finding.

 Likelihood of confusion is a question of fact that is reviewed for clear error.
Sunbeam Prods., 123 F.3d at 257. The likelihood of confusion is determined with
respect to the product's typical buyer. Kentucky Fried Chicken Corp. v. Diversified
Packing Corp., 549 F.2d 368, 389 n.26 (5th Cir. 1977); see also Pro Hardware, Inc.
v. Home Ctrs. of Am., Inc., 607 F. Supp. 146, 152 (S.D. Tex. 1984). The likelihood
of confusion is determined by application of the "digits of confusion" test. Sunbeam
Prods., 123 F.3d at 257. The factors weighed include "(1) similarity of the two
products; (2) identity of retail outlets and purchasers; (3) identity of advertising
media; (4) strength of the trademark or trade dress; (5) intent of the defendant; (6)
similarity of design; (7) actual confusion; and (8) degree of care employed by
consumers." Id. (2) "Proof of actual confusion is not a prerequisite, and no single factor
is dispositive of the likelihood of confusion." Id.; see also Taco Cabana Int'l, Inc.
v. Two Pesos, Inc. 932 F.2d 1113, 1118-19 (5th Cir. 1991), aff'd, 505 U.S. 763, 112
S. Ct. 2753 (1992). However, a showing of actual confusion is highly persuasive as
to the likelihood of confusion. Sun Banks of Fla., Inc. v. Sun Fed. Savs. & Loan
Ass'n, 651 F.2d 311, 319 (5th Cir. 1981); Pro Hardware, 607 F. Supp. at 152. 

 (1), (6) Similarity of the two products and of design 

 Like Yellow Cab, Safe Cab operated taxis that serve customers in the Houston
area in transit between city airports and hotels. Yellow Cab presented evidence that
Safe Cab painted its taxi with a yellow color nearly identical to Yellow Cab's. 
Indeed, the two cabs could be distinguished only if they were side-by-side in broad
daylight. Moreover, the front views were very similar, and both Yellow Cab's and
Safe Cab's taxis were rolling advertisements, although Safe Cab's taxi had its own
name and telephone number printed on the side. 

 (2) Identity of retail outlets and purchasers

 Because it had only one taxi, Safe Cab serviced only airports and hotels. All
Houston cabs are required by City ordinance to charge the same fare, and, at airports
and hotels, most patrons take the next cab in line. There was evidence, however,
while these services were the same, Yellow Cab was much larger, used a dispatcher,
and was able to offer more services. 

 (3) Identity of advertising media 

 Both Yellow Cab's and Safe Cab's taxis were rolling advertisements. 
However, in addition, Yellow Cab promoted yellow in its marketing, purchased large
advertisements in the Yellow Pages, was active in charities, and used a promotional
vintage car and Hummer. There is no evidence that Safe Cab did any advertising
other than using its taxi as a rolling advertisement. However, Safe Cab also used a
receipt form almost identical to Yellow Cab's. 


 (4) Strength of trade dress 

 Blanton Daniels, the person charged with taxi regulation for the City of
Houston, testified that Yellow Cab had greater name recognition than any other cab
business in Houston. Moreover, Yellow Cab established that it was the senior user
of the color yellow for cabs in Houston, an area it had serviced since the 1940's, that
it provided over 1,200,000 rides a year to customers, that it promoted the color yellow
in substantial advertising in a variety of media, and that it was the dominant provider
of taxi services in the Houston area. Nevertheless, approximately 20 cab companies
other than Yellow Cab were operating yellow-colored taxis in Houston in 1993, the
year Daniels began working at the agency. However, the City had placed a
moratorium on the issuance of new permits to yellow-colored taxicabs a year prior
to trial, and Daniels testified that he would not issue any more permits for yellow cabs
because of the likelihood of confusion.

 (5) Intent of the defendant 

 There was no evidence of direct intent on the part of Safe Cab to infringe
Yellow Cab's trade dress. However, both owners of Safe Cab had previously worked
at Yellow Cab, chose a virtually identical color for their cab, used the cab as a rolling
advertisement, and used nearly identical receipt forms.


 (7), (8) Actual confusion and degree of care employed by consumers 

 There was no direct evidence that any consumer had actually confused Safe
Cab with Yellow Cab. However, there was indirect evidence of confusion between
yellow-colored cabs and Yellow Cabs. Daniels testified that customers had
associated the concept of a yellow cab with Yellow Cab and that, if the cab color
scheme were to come before him again for approval it would not be approved because
of the potential for confusion in the public. He also testified, "I think a person
walking out to get a cab might be fooled. It could happen." Because of the
likelihood of confusion to the consuming public he had put a moratorium on the color
yellow. Finally, he testified that he would not confuse the two because of his long
experience, but "I can see where a person would look at a yellow car and if it's a cab,
they were automatically going to assume it's Yellow Cab." 

 In sum, Yellow Cab produced evidence of likelihood of confusion with respect
to each of the relevant factors with the exception of direct evidence of actual
confusion, including evidence of virtually identical color, design, geographic area,
and services to the extent Safe Cab offered services, as well as indirect evidence of
confusion of other yellow cabs with Yellow Cab. The fact that Yellow Cab had a
much larger fleet, provided more services, or used additional types of media to
advertise its services does not lessen the impact of the nearly identical color, design,
use of advertising, and services offered by Safe Cab to the extent Safe Cab advertised
or offered taxi services at all. Countervailing evidence, however, showed that a
number of other yellow cabs had been operating in Houston for a period of time
before a moratorium was placed on the issuance of new licenses for taxi services
using yellow cabs.

 I would hold that the jury's finding of actual confusion in response to Jury
Question No. 3 was not so against the overwhelming weight of the evidence as to be
manifestly wrong and unjust. Moreover, even had the evidence not supported the
jury's finding of actual confusion, proof of actual confusion is not a prerequisite for
a finding of likelihood of confusion; nor is any single factor dispositive of the
likelihood of confusion. Sunbeam Prods., 123 F.3d at 257.

 I would overrule Safe Cab's sixth point of error. (3)





CONCLUSION


 For the foregoing reasons, I would affirm the judgment of the trial court.



 Evelyn V. Keyes

 Justice


Panel consists of Justices Nuchia, Keyes, and Hanks.

Justice Keyes, dissenting.
1. I would have addressed appellant's legal and factual sufficiency arguments first and
rendered judgment rather than addressing appellant's jury instruction issue first and
remanding for a new trial. The majority concludes that it cannot do this because
"Safe Cab did not move for a directed verdict, file a motion for judgment
notwithstanding the verdict, or otherwise preserve its no-evidence complaint except
in its motion for new trial. . . . Therefore, because Safe Cab asked only for a new trial,
we can only remand for a new trial." Therefore, it addressed the jury charge first. 
However, the majority does not dispute that Safe Cab did preserve its no-evidence
point of error. See Cecil v. Smith, 804 S.W.2d 509, 510-11 (Tex. 1991) ("A 'no
evidence' point of error is preserved for appeal if "raised by (1) a motion for
instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an
objection to the submission of the issue to the jury, (4) a motion to disregard the jury's
answer to a vital fact issue, or (5) a motion for new trial."). Rendition of judgment
is the appropriate remedy if the party with the burden of proof allegedly offers no
evidence, or legally insufficient evidence, to support a claim. Southwestern Bell Tel.
Co. v. Garza, 164 S.W.3d 607, 626 n.58 (Tex. 2004); Horrocks v. Texas Dept. of
Transp., 852 S.W.2d 498, 499 (Tex. 1993) (per curiam) ("Ordinarily, an appellate
court should render judgment after sustaining a complaint as to the legal sufficiency
of the evidence."). 
2. The jury instruction was not challenged by Safe Cab. The jury was instructed to
consider 10 factors:



 The similarity between the parties' products or services;
 The strength of the YELLOW CAB'S trade dress;
 The similarity between the parties' trade dress;
 The identity of the advertising media used;
 SAFE CAB'S intent;
 The identity of customers and retail outlets;
 Evidence of actual confusion;
 The degree of care exercised by typical purchasers of the product or service';
 Any previous relationship between the parties; and
 The notoriety of YELLOW CAB'S trade dress.



 No one of these factors is necessarily conclusive, but the consideration of each should
be weighed in light of the total evidence produced at trial. You are instructed that
YELLOW CAB need not produce evidence on all or even a majority of these factors. 
You are further instructed that no one factor is dispositive.
3. In its second point of error, Safe Cab argues that the trial court erred in entering
judgment for Yellow Cab because the jury did not find an element of its Texas
common-law unfair competition claim, namely irreparable harm. Because I would
hold that Yellow Cab established trade dress infringement under the Lanham Act, I
would not reach this issue.